FOURTH DIVISION
September 30, 2015

2015 IL App (1st) 142260

No. 1-14-2260

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10 CR 10878 |
| | ) | |
| JOAN LOPEZ, | ) | Honorable |
| | ) | Maura Slattery-Boyle, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court, with opinion.
Presiding Justice McBride and Justice Ellis concurred in the judgment and opinion.

## OPINION

¶ 1    On August 4, 2010, defendant, Joan Lopez, pled guilty to possession of a controlled substance. The circuit court of Cook County accepted the parties' plea agreement and sentenced defendant to "24 months' 410 probation." In April 2011 defendant filed a document titled "Amended Motion to Withdraw Plea of Guilty." The trial court treated defendant's pleading as a petition for postconviction relief and it was summarily dismissed. This court reversed, finding defendant stated the gist of a constitutional claim counsel was ineffective for failing to properly advise defendant of the immigration consequences of his plea. On remand, the trial court granted the State's motion to dismiss the petition.

¶ 2    For the following reasons, we reverse.

¶ 3                            BACKGROUND

¶ 4    The factual basis for defendant's guilty plea established that police arrested defendant smoking a hand-rolled cigar that smelled of cannabis and seized a bag filled with a substance determined to be cannabis from defendant's waistband. The cigar contained 0.6 grams of

cannabis and the bag contained 195.1 grams of cannabis.  At defendant's plea hearing, the State advised the court that in exchange for defendant's plea of guilty, the "State is offering 410 probation."  The trial court admonished defendant he was charged "with the offense of possession of controlled substance" and that the offense was a Class 4 felony.  The State asked for "leave for an amendment not to the class, but the amount" of controlled substance alleged in the information.  The court allowed leave to amend.

¶ 5     The trial court admonished defendant as to his rights with regard to pleading guilty. The following colloquy pertinent to this appeal occurred:

"THE COURT: Sir, are you a United States citizen?

THE DEFENDANT: No.

THE COURT: You're not?

THE DEFENDANT: No.

THE COURT: Sir, do you understand--are you or are you--are you a United State's citizen, yes or no?

THE DEFENDANT: No.

THE COURT: Okay.  Do you understand, sir, that this felony conviction, while it is right now may affect your future status in this country?  Sir, do you understand that?

THE DEFENDANT: Yes, [Y]our Honor.

MR. BENESH [Assistant Public Defender]: Your Honor, for the record, we did discuss that on the 15th of July.

THE COURT: Is that correct? You had this discussion with

Mr. Benesh about how this may affect your status in this country?

THE DEFENDANT: Yes.

THE COURT: Do you still wish to persist with your plea of

guilty, knowing this may affect your status in the country?

THE DEFENDANT: Yes, [Y]our Honor."

¶ 6    The trial court stated defendant "does understand this may impact his status in the country from [*sic*] the future and he wishes to still plead guilty." The court stated it would accept the plea agreement, found defendant guilty, and sentenced him to "24 months 410 probation." The record indicates that the court entered a conviction for possession with intent to deliver more than 10 but less than 30 grams of cannabis in violation of section 5(c) of the Cannabis Control Act (720 ILCS 550/5(c) (West 2010)). Defendant never completed his probation because he was deported.

¶ 7    In April 2011 defendant filed a document titled "Amended Motion to Withdraw Plea of Guilty." Defendant brought the motion pursuant to section 122-1 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 (West 2010)); section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2010)); Illinois Supreme Rule 604(d) (eff. July 1, 2006) and Rule 402(a) (eff. July 1, 1997); and *Padilla v. Kentucky*, 559 U.S. 356 (2010). The trial court, and the parties, treated the motion as a petition for postconviction relief. Defendant's petition sought to withdraw his guilty plea on the grounds he was not advised of the nature of the charge he was pleading guilty to and his attorney did not inform him of the consequences of his plea. Defendant specifically alleged, in pertinent part, as follows:

"2.	Defendant thought that he was pleading guilty to possession of a controlled substance as this was the charge admonished by this Honorable Court.  [Citation.]

3.	But the certified disposition of these proceedings show [*sic*] that Defendant was convicted of manufacturing and delivery.  [Citation.]

4.	Before Defendant's plea of guilty in this matter, he was not informed by his defense attorney of the immigration consequences of this plea of guilty and Defendant was not aware that he was pleading guilty to manufacturing and delivery of cannabis.  [Citation.]

5.	Had Defendant known of the true nature of the charge and the harsh immigration consequences that would arise out of this plea he would not have pled guilty.

* * *

8.	Defendant was prejudiced when he was not advised of the true nature of the charge and when he pled guilty to manufacturing and delivery."

¶ 8	Defendant attached his own affidavit in support of the petition.  Defendant averred that prior to the hearing on his guilty plea (he did not state a date), his attorney informed him the State had "two separate" plea agreement offers.  The first offer was for defendant to plead

guilty and receive "a stricter form" of probation that would be added to his criminal record. Defendant then averred, in pertinent part, as follows:

> "The second plea offer was for a more serious charge (Manufacture and Delivery of Cannabis) but the *** Public Defender misled me to believe I would get a less stringent form of Probation by pleading guilty to this charge, and the conviction would not be added to my criminal record, and that this conviction would not have adverse immigration consequences." (Emphases omitted.)

¶ 9 The trial court held a hearing on defendant's petition. The court found it had been made clear to defendant when he pled guilty that a felony conviction would impact his immigration status. The court also found the conviction was not for manufacture and delivery, but both charges were Class 4 felonies with identical sentencing guidelines. Defendant's attorney asked whether the judgment could be amended to reflect that defendant was convicted of possession of a controlled substance but the trial court refused. The court dismissed defendant's petition. Defendant filed a motion to reconsider. Defendant's attorney argued, in part, that defendant was not fully apprised of the nature of the charge to which he pled guilty, where he was advised the charge was possession of a controlled substance but the judgment states defendant was convicted of possession with intent to deliver. The trial court denied defendant's motion to reconsider the order dismissing the petition.

¶ 10 Defendant appealed, arguing, in pertinent part, his trial counsel was ineffective for misadvising him of the immigration consequences of the guilty plea, the trial court failed to

sufficiently admonish him of the nature of the charge as required by Rule 402(c), and his due process rights were violated because he was never advised of the true charge. This court found that the penal consequences of possession of a controlled substance and possession with intent to deliver were the same in this case and the trial court was not required to admonish defendant of collateral consequences, including the effect of the plea on defendant's immigration status. Therefore, this court found, the trial court substantially complied with Rule 402 by informing defendant of the direct consequences of his plea and defendant was not prejudiced by the court's incomplete admonishments. Consequently, the court did not violate defendant's due process rights.

¶ 11    This court also found that accepting as true defendant's allegation that his attorney advised him that pleading guilty to a charge of manufacture and delivery of cannabis would not have adverse immigration consequences, defendant sufficiently alleged a constitutional deprivation to survive dismissal at the first stage of postconviction proceedings. This is because under the Deportation of Aliens statute (8 U.S.C. § 1227(a)(2)(B)(i) (2006)), a conviction for a violation of any offense relating to a controlled substance, "other than a single offense involving possession *** of 30 grams or less of marijuana, is deportable." This court reversed the first-stage dismissal and remanded for further proceedings.

¶ 12    On remand, the State filed a motion to dismiss. In the State's motion to dismiss it stated that "defendant entered a plea of guilty to the amended charge of Delivery of Cannabis of between 10-30 grams, which is also a Class 4 felony, and was sentenced to 24 months' 410 probation pursuant to 720 ILCS 550/10." Defendant filed a response to the State's motion to

dismiss and supported it with his own affidavit. In his affidavit in support of his response to the State's motion to dismiss, defendant averred, in pertinent part, as follows:

"On July 15, 2010, Cook County Public Defender Mr. Benesh, Mrs. De la Rosa, and I, Joan Ruben Lopez, had a discussion about a plea bargain offered by the state Prosecutor in exchange for a guilty plea. Mr. Benesh and Mrs. De la Rosa explained that for my plea of guilty to possession of cannabis, I would get a type of special probation that was less stringent for first time convicted felons. ***

Mr. Benesh and Mrs. De la Rosa advised me that this was the best plea bargain because it would not have adverse immigration consequences. They never advised me that it would cause me to be immediately deported from the United States of America and separated from my family. If they would have explained to me that by pleading guilty I would have been exiled from this country forever, I never would have pleaded guilty or rather would have ask [sic] for a modification to avoid getting automatically deported." (Emphases omitted.)

¶ 13    The State argued that to plead prejudice so as to survive the second stage of postconviction proceedings defendant was required to plead actual innocence or a plausible defense and he failed to do so. The trial court stated that the court recalled asking defendant if he had spoken with his attorney and defendant responded "Yes." At the hearing on the

State's motion to dismiss, the court stated: "Then, I indicated as well that 'do you understand that you may be deported.' He said he did understand that, and he said he wished to continue with the plea of guilty." The court granted the motion to dismiss the petition.

¶ 14 When defendant's attorney asked about the standard at the second stage of postconviction proceedings being that all well-pled allegations are taken as true to determine whether they allege a constitutional violation, the court explained as follows: "I understand that, but given what I have, I don't even find that it's well-pled. That's what I'm finding here, is that there's no actual pleading, even if taken true, one that there is a constitutional violation, and two that he's prejudiced [*sic*] actual innocence under *Strickland* ineffectiveness. He can't even prove the two prongs." When defense counsel argued defendant was misadvised about the consequences of his guilty plea, the trial court found "that was a result later on."

¶ 15 Subsequently, the trial court denied defendant's motion to reconsider the order granting the State's motion to dismiss. In ruling on the motion to reconsider, the court stated that it found the deficiency in the allegations of prejudice to be significant. The court found that the prejudice alleged was separation from defendant's family after he was deported. The court ruled: "my previous order to stand, based on the lack of showing of prejudice ***." Defense counsel argued that under *Padilla*, to show prejudice defendant had to demonstrate that the decision to reject the plea would have been rational under the circumstances. The court rejected that argument reasoning that the plea was negotiated with "a subsequent deportation."

¶ 16 This appeal followed.

¶ 17                                    ANALYSIS

¶ 18     We review a judgment granting a motion to dismiss a petition for postconviction relief at the second stage of postconviction proceedings *de novo*. *People v. Garcia*, 405 Ill. App. 3d 608, 614 (2010).  At the second stage of postconviction proceedings, we must determine whether the well-pled allegations in the complaint make a substantial showing of a violation of defendant's constitutional rights. *People v. Flowers*, 2015 IL App (1st) 113259. ¶ 31.  Well-pled allegations are those not positively rebutted by the record. *Id.*  The "substantial showing" that must be made is that the well-pled allegations, if proven at an evidentiary hearing, would entitle defendant to relief. *People v. Domagala*, 2013 IL 113688, ¶ 35. Defendant raised two claims:  (1) defendant received ineffective assistance of counsel because counsel failed to advise defendant of the immigration consequences of pleading guilty to manufacture and delivery of cannabis, and (2) the trial court failed to advise defendant of the nature of the charge to which he pled guilty, specifically manufacture and delivery of cannabis.

¶ 19     This court has previously found that the trial court did not violate defendant's constitutional rights by failing to inform him of the nature of the charge.  We found that although the admonishments were "incomplete," defendant was not prejudiced by them. *People v. Lopez*, 2013 IL App (1st) 112017-U, ¶ 33.[1]  We determined defendant was not

---

[1]     An order entered under Illinois Supreme Court Rule 23(b) (eff. Jan. 1, 2011) may not be cited by any party except to support law of the case.  "The law of the case doctrine bars relitigation of an issue that has already been decided in the same case such that the resolution of an issue presented in a prior appeal is binding and will control upon remand in the circuit court and in a subsequent appeal before the appellate court.

prejudiced by the trial court's failure to properly admonish defendant that he was pleading guilty to possession with intent to deliver and erroneously admonishing defendant he was pleading guilty to simple possession because the penal consequences (of which defendant was advised) for both offenses are the same, and the trial court was not required to admonish defendant of the collateral consequences, such as immigration consequences, of his plea. *Id.* (citing *People v. Delvillar*, 235 Ill. 2d 507, 521 (2009)).

¶ 20 Confining his argument to the issue of counsel's deficient performance, on appeal defendant argues the trial court employed an improper analysis to dismiss his postconviction petition at the second stage of postconviction proceedings because the court failed to take the well-pled allegations in the petition as true. Defendant argues those allegations are sufficient to make a substantial showing of prejudice from counsel's deficient performance in failing to admonish him of the consequences of pleading guilty to manufacture and delivery of a controlled substance, because it is rational defendant would have rejected the offer to plead guilty to that offense had he known of its immigration consequences.

¶ 21 "A challenge to a guilty plea alleging ineffective assistance of counsel is subject to the standard set forth in *Strickland v. Washington*, 466 U.S. 668 *** (1984)." *People v. Hall*, 217 Ill. 2d 324, 334-35 (2005).

> "[T]he sixth amendment guarantees a defendant the right to effective assistance of counsel at all critical stages of the criminal proceedings, which include the entry of a guilty plea. [Citation.]

---

[Citation.]" (Internal quotation marks omitted.) *Perik v. JPMorgan Chase Bank, N.A.*, 2015 IL App (1st) 132245, ¶ 30.

To establish a claim of ineffective assistance of counsel in the plea process, the defendant must show counsel's performance was deficient and that the deficient performance resulted in prejudice. [Citations.] More specifically, a defendant must prove that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. [Citation.]" (Internal quotation marks omitted.) *People v. Hughes*, 2012 IL 112817, ¶ 44.

¶ 22                    I. Deficient Performance

¶ 23    The State argues defendant's allegation trial counsel failed to inform him of the consequences of his guilty plea are not well-pled because they are affirmatively rebutted by the record. We find the allegation that trial counsel failed to advise defendant of the potential effect of his plea on his status in this country is not rebutted by the record. At defendant's plea hearing, the trial court admonished defendant he would be pleading guilty to "[p]ossession of a controlled substance allegedly occurring May 16th 2010" and asked the State: "It is as charged, correct ***?" The State confirmed the charge was possession of a controlled substance. After the court admonished defendant as to the potential sentences, period of mandatory supervised release, and fines for a Class 4 felony, the State asked for "leave for an amendment not to the class, but the amount" of controlled substance alleged in the information. The court allowed leave to amend. Although the trial court admonished

- 11 -

defendant he was charged and was pleading guilty to "the offense of possession of controlled substance" the criminal disposition sheet in the record before this court reflects that defendant was convicted of possession of 10 to 30 grams of cannabis with intent to deliver. In our disposition of defendant's appeal from the summary dismissal of his postconviction claims, we noted that during the hearing prior to the summary dismissal, the "trial court also stated that the conviction was not for manufacture and delivery." *Lopez*, 2013 IL App (1st) 112017-U, ¶ 10. There is nothing in the record to indicate when or how the charge was amended from simple possession of a controlled substance to possession with intent to deliver. If, as the trial court found, the guilty plea and conviction is not for manufacture and delivery, then there was no reason for the court to refuse to correct the conviction. Ensuring that the trial court's judgment is accurately recorded has nothing to do with " 'immigration and how they interpret our law.' " *Id.* "[A] court may *** correct the record to make it accurately reflect the judgment that was in fact entered." (Emphasis omitted.) *People v. Latona*, 184 Ill. 2d 260, 278 (1998). On remand, the trial court is directed to make any corrections to the record needed to cause the record of defendant's proceedings to accurately reflect the court's judgment accepting defendant's guilty plea, including an accurate recordation of the offense to which defendant pled guilty. If the charge was amended to possession with intent to deliver, the trial court is directed to make a record of when and under what circumstances the charge was amended, because this will aid us in our evaluation of counsel's performance should this matter return to this court.

¶ 24 Later in the plea hearing, the trial court asked defendant if he understood "this felony conviction *** may affect your future status in this country." Defendant's attorney informed

the court they had discussed the potential effect of defendant's guilty plea—which the court said was to simple possession—on defendant's future status in this country. This court has already found that there are "irregularities in the record regarding the amendment of the information." *Lopez*, 2013 IL App (1st) 112017-U, ¶ 33. Contrary to the State's arguments on appeal, we find there is nothing to rebut defendant's allegation his attorney did not admonish defendant of the consequences of pleading guilty to possession with intent to deliver where the matter proceeded on the assumption defendant was pleading guilty to simple possession.

¶ 25    In his second affidavit defendant averred it was "explained that for my plea of guilty to possession of cannabis" he would receive probation and his attorneys advised him this plea "would not have adverse immigration consequences. They never advised me that it would cause me to be immediately deported from the United States of America." (Emphases omitted.) The State agues the "record positively rebuts defendant's claim of ineffective assistance *** in his second affidavit" because the transcript of the plea proceedings reflects defendant "was advised *** how the guilty plea might affect his status in this country." The record does not reflect that defendant was advised his guilty plea would result in his deportation. At best, the record reflects that defendant and his attorney discussed how a plea to possession of more than 10 but less than 30 grams of cannabis "may affect" defendant's status. The record does not reflect what defendant's attorney told him that effect may be. It is plausible defendant's attorney told him the effect may be that defendant would not be deported. See 8 U.S.C. § 1227(a)(2)(B)(i) (2006) (conviction for a violation of any offense relating to a controlled substance, "other than a single offense involving possession *** of 30 grams or less of marijuana, is deportable"). Just because defendant was advised of something

does not mean he was correctly advised. "Where the defendant is pleading guilty to a possession charge which under section 1227 is clearly deportable *** counsel must tell his client that deportation is inevitable as a result of the plea." *Lopez*, 2013 IL App (1st) 112017-U, ¶ 40. Whatever conversation defendant and his attorney had about what the effect of his plea "may" be, the record does not disclose that defense counsel told defendant deportation was inevitable and, therefore, does not positively rebut defendant's assertion counsel did not so advise him. See *Padilla*, 559 U.S. at 369 ("when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear").

¶ 26    The State also argues that defendant's allegation during the second-stage proceeding as to the nature of the misadvice he received in the plea process "contradicts the description of that misadvise defendant offered during the first-stage proceeding." That is, the State argues defendant's affidavits are conflicting. The "conflict" the State points out is that during the plea hearing, defendant and his attorney agreed that on July 15, defendant and his attorney discussed "the potential consequences of the guilty plea for defendant's future immigration status" but in the affidavit offered in the second-stage proceedings, defendant averred that his attorneys "informed defendant that a guilty plea would not have adverse immigration consequences." During the plea hearing neither defendant nor his attorney told the trial court what "potential consequences" they discussed, so there is no conflict with the affidavit stating they discussed that the plea would have no adverse consequences. We will not assume that the consequence defendant and his attorney did discuss was deportation or that deportation was inevitable.

¶ 27    The State also argues that the affidavit defendant filed in response to the State's motion to dismiss contradicts the affidavit defendant filed in support of the motion to withdraw guilty plea, which contained defendant's postconviction claims.  Here, the contradiction noted by the State is that in the initial affidavit defendant averred that "he relied on the unnamed female Public Defender's advice in accepting the guilty plea," but in the subsequent affidavit defendant averred he had a conversation with Mr. Benesh and Mrs. De la Rosa on July 15, 2010, in which they advised him his plea would have no adverse immigration consequences.  We do not find this to be a material contradiction as to defendant's claims.  It is immaterial who gave defendant the erroneous advice, and defendant mentions the presence of both assistant public defenders in both affidavits.

¶ 28    The State argues the record reflects defendant was given advice "correctly by attorney Benesh" because the "trial court inquired of defendant whether he understood that a guilty plea may affect his future immigration status and defendant responded that he did," and because "counsel added that he and defendant had previously discussed the issue."  As this court has already found, "the fact that the attorney discussed the consequences does not resolve the issue of counsel's effectiveness.  Counsel is not only required to discuss the issue of immigration with the defendant, but also to give accurate information." *Lopez*, 2013 IL App (1st) 112017-U, ¶ 39.  Here, we do not know what information counsel gave defendant, defendant has averred the information was that there would be no adverse consequences, and the record does not positively rebut that averment.

¶ 29    This is true regardless of whether the conversation between defendant and his attorney was based on a plea to possession with intent to deliver or simple possession.  Thus, the

contradiction in defendant's first and second affidavit as to the nature of the offense to which defendant would plead guilty is inapposite. In his initial affidavit, defendant averred that the State offered a plea bargain to the more serious charge of possession with intent to deliver, while in the second affidavit defendant averred the offer was for a plea to possession of cannabis. But in both affidavits, defendant averred counsel advised him his plea would have no adverse immigration consequences. The admissions on the record that defendant and his attorney discussed that his plea "may" affect his immigration status, without more, does not positively rebut those averments.[2] The record currently reflects a guilty plea to the offense of possession with intent to deliver. Counsel's advice, if proven, that pleading guilty would have no adverse immigration consequences, was erroneous.

¶ 30    The State asks this court to "presume that the advice Mr. Benesh provided to defendant was accurate." This court does not presume facts. Yet throughout these proceedings there has been a consistent presumption that just because possession with intent to deliver is deportable, defendant's attorney (who defendant alleges was ineffective) told him that in their conversation. "There is no fact finding or credibility determination at this stage. [Citation.] As a result, the State's motion to dismiss raises solely the issue of whether the

---

[2]    Defendant and his attorney told the trial court at the plea hearing that they had discussed the fact his plea may affect his immigration status. This does not establish counsel told defendant deportation was inevitable. It is equally plausible defendant's attorney advised him his guilty plea should not have adverse immigration consequences, but might depending on the decision of immigration officials. "The trial court also stated that the conviction was not for manufacture and delivery [but] that 'if the Illinois INS or Immigration Central Emergency [*sic*] or ICE interprets the Illinois statute one way or another, that's their determination based upon the reading of the facts or charging document.'" *Lopez*, 2013 IL App (1st) 112017-U, ¶ 10.

petition is sufficient as a matter of law." *People v. Minniefield*, 2014 IL App (1st) 130535, ¶ 58. The allegations in the petition are not positively rebutted by the record. If defendant's allegations counsel did not give him correct advice as to the consequences of his plea to possession with intent to deliver are proven at an evidentiary hearing, and if defendant can satisfy the prejudice prong of *Strickland*, defendant will be entitled to relief. *Padilla*, 559 U.S. at 369.

¶ 31                                II. Prejudice

¶ 32     The trial court denied defendant's motion to reconsider based on its finding defendant failed to plead prejudice. On appeal, the State argues defendant failed to adequately plead prejudice because defendant did not allege he was actually innocent of the offense or articulate a plausible defense. We hold that when plea counsel fails to advise a defendant of the succinct, clear, and explicit immigration consequences of a guilty plea, an allegation of a plausible defense or actual innocence is not indispensible to a finding of prejudice. In H*ughes*, our supreme court reiterated that:

> "[a] bare allegation that the defendant would have pleaded not
> guilty and insisted on a trial if counsel had not been deficient is
> not enough to establish prejudice. [Citation.] Rather, we have
> found that a defendant must assert either a claim of actual
> innocence or articulate a plausible defense that could have been
> raised at trial. [Citation.] *** [W]e have noted that the question
> will depend largely on predicting whether the defendant would

have likely been successful at trial. [Citation.]" *Hughes*, 2012 IL 112817, ¶ 64 (citing *Hall*, 217 Ill. 2d at 335-36).

¶ 33 But, our supreme court went on to "recognize that there may be circumstances where a defendant could prove that the deficient performance affected the outcome of the plea process in other ways, [and] as with all applications of the second prong of the *Strickland* test, the question whether a given defendant has made the requisite prejudice showing will turn on the facts of a particular case." *Id.* ¶ 65. The *Hughes* court cited *Padilla*, which held that "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372.

¶ 34 In *Hughes*, the defendant pled guilty to one count of aggravated criminal sexual abuse. *Hughes*, 2012 IL 112817, ¶ 1. The Attorney General filed a petition to commit the defendant as a sexually violent person under the Sexually Violent Persons Commitment Act (725 ILCS 207/1 *et seq.* (West 2006)). The next day, the defendant filed a motion to withdraw his guilty plea, alleging that he was never advised by the court or his counsel of the possibility that the State could file a sexually violent person petition as a result of the plea and, consequently, he did not knowingly and voluntarily enter the plea. *Hughes*, 2012 IL 112817, ¶ 10. The court held the trial court did not err in denying defendant's motion to withdraw his plea. *Id.* ¶ 71. The court held the defendant did not articulate any prejudice "beyond stating that had he known of the possibility for civil commitment he would not have pled guilty because he thought that it would resolve the matter." *Id.* ¶ 66. We find *Hughes* distinguishable.

¶ 35    First, although stated in connection with its finding counsel's performance was not deficient, we think it pertinent to the absence of a showing of prejudice in that case that the "defendant was less than clear as to whether he had discussed the possibility of a sexually violent person petition with counsel and the extent of that conversation and his knowledge prior to the plea." *Id.* ¶ 62. If the defendant had knowledge a sexually violent persons commitment proceeding could result from his plea, then he certainly was not prejudiced by counsel's alleged failure to advise him of that possibility. See generally *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000) ("counsel's deficient performance must actually cause the forfeiture of the defendant's appeal").

¶ 36    Further, although our supreme court found that "defense counsel has a minimal duty to advise a defendant who pleads guilty to a triggering offense subject to the provision of the Sexually Violent Persons Commitment Act [(SVPCA)] that he will be evaluated for and may risk involuntary commitment" (*Hughes*, 2012 IL 112817, ¶ 60), the court noted that a "conviction of a sexually violent offense does not serve as the sole predicate for imposing the commitment under the [SVPCA] and requires a separate civil proceeding, where a defendant will have an opportunity to contest its application to him." *Id.* ¶ 50. Thus, in the context in which *Hughes* was decided, the prejudice—*i.e.*, civil commitment—to a defendant who is not properly advised is less certain than the prejudice to a defendant who is not advised that his guilty plea will inevitably lead to deportation. The former rightly requires a greater showing by the defendant to establish prejudice from counsel's deficient performance in failing, under

limited circumstances,[3] to advise her client of the collateral consequences of a guilty plea than the latter.

¶ 37    Despite the fact defendant in this case only alleged he would not have pled guilty had he known of the immigration consequences of his plea, we find defendant's allegations, viewed as a whole, are sufficient if proved to demonstrate prejudice. In *People v. Deltoro*, 2015 IL App (3d) 130381, ¶ 4, the defendant, who had been a legal permanent resident of the United States, filed a postconviction petition in which he alleged that both the trial court and plea counsel failed to advise him of potential immigration consequences of his guilty plea. Specifically, plea counsel failed to advise the defendant "he could lose his status as a legal permanent resident and be deported." *Id.* ¶ 16.  The petition alleged it would have been rational to reject the plea "because he had been legally living in the United States for over 35 years, all of his family and friends resided in the United States, and he no longer had any ties to Mexico, the country of his birth." *Id.* ¶ 6.  The court found that it was at least arguable that the defendant's plea counsel's performance was deficient. *Id.* ¶ 18.  Turning to the prejudice prong of the *Strickland* analysis, the court found that while "the apparent existence of a plausible trial defense *** may make a defendant's showing of prejudice stronger, it is not *required* in order to show prejudice in cases involving counsel's failure to advise a defendant as to the immigration consequences of his guilty plea." (Emphasis in original.) *Id.* ¶ 24.  The

---

[3]    "[N]ot every failure of counsel to inform the defendant of applicable collateral consequences is a basis for withdrawing a plea of guilty.  Requiring defense counsel to predict and explain all of the ways in which a client will be impacted by a conviction would not be reasonable.  Rather, where the consequence is severe, certain, and sufficiently enmeshed in the criminal process the sixth amendment right to counsel may give rise to a basis for withdrawing a plea." *Hughes*, 2012 IL 112817, ¶ 59.

court found that when a defendant risks deportation, the defendant may suffer prejudice from counsel's failure to properly advise him or her "regardless of the strength of his case at trial." *Id.* The court concluded as follows:

> "As the *Padilla* Court recognized, preserving a noncitizen defendant's right to stay in the United States may be more important to the defendant than a potential sentence of imprisonment. [Citations.] A defendant who fears deportation more than he does imprisonment might rationally choose to risk a lengthier prison sentence in exchange for even a slight chance of prevailing at trial and thereby avoiding deportation. Counsel's failure to advise his client of the risk of deportation prejudices the defendant by depriving him of that chance. Under such circumstances, it would be inappropriate and overly burdensome to require the defendant to show that he would have succeeded at trial in order to establish prejudice." *Id.* ¶ 24.

¶ 38 We hold that, given the facts alleged in the petition and supporting materials, taken as true, had he been properly advised of the consequences, defendant's decision to reject the plea bargain would have been rational under the circumstances. We note those circumstances include the nature of the offense and defendant's lack of criminal history as revealed at the plea hearing. In defendant's affidavit attached to his response to the State's motion to dismiss, defendant averred counsel "*never* advised me that [pleading guilty] would cause me to be immediately deported from the United States of America and separated from my family. If

they would have explained to me that by pleading guilty I would have been exiled from this country forever, I *never* would have pleaded guilty or rather would have ask [*sic*] for a modification to avoid getting automatically deported." (Emphases in original.) On appeal, defendant argues in his appellate brief he "came to the United States as a toddler and his entire immediate family is in this country. Had he known the plea would ensure his deportation *** and cause him to be separated from his family—he would have rejected the plea bargain. And this decision would have been completely rational considering [his] family ties in the United States—and his incentive to avoid deportation."

¶ 39    We acknowledge the court's decision in *People v. Pena-Romero*, 2012 IL App (4th) 110780, ¶ 17, finding the defendant in that case failed to satisfy the prejudice prong where the defendant "did not make a claim of innocence or articulate a plausible defense." We disagree for the reasons stated herein. See also *People v. Carranza-Lamas*, 2015 IL App (2d) 140862, ¶ 35 n.2 (deciding case based on first prong of *Strickland* and declining to resolve the potential conflict between *Pena-Romero* and *Deltoro*). Regardless, *Pena-Romero* is distinguishable from this case. First, unlike this case, in *Pena-Romero*, the defendant "was admonished by the trial court that the conviction could result in deportation." *Pena-Romero*, 2012 IL App (4th) 110780, ¶ 17. In this case, the trial court asked defendant if his attorney had discussed with him how his plea may affect his status in this country. The record does not refute that defendant's attorney did not advise defendant that deportation was inevitable. Based on the conviction currently on the record that outcome was clear and explicit and counsel had a duty to so inform defendant. Second, the allegations in defendant's petition distinguish this case from *Pena-Romero*. There, the defendant did "not explain how his alleged ignorance of the

deportation consequences factored into his decision to plead guilty." *Id.* ¶ 18. In this case, defendant has alleged the type of "family ties and bonds to the United States [that can] provide a rational basis to reject a plea deal." (Internal quotation marks omitted.) *Deltoro*, 2015 IL App (1st) 130381, ¶ 23 (quoting *People v. Guzman*, 2014 IL App (3d) 090464, ¶ 35). It is rational that under such circumstances, "[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence. [Citation.]" (Internal quotation marks omitted.) *Padilla*, 559 U.S. at 368.

¶ 40 For these reasons as well, the court's decision in *People v. Gutierrez*, 2011 IL App (1st) 093499, is distinguishable. There, the court held the defendant in that case could not establish prejudice under the second prong of the *Strickland* analysis. *Id.* ¶ 45. The defendant had argued he established cause and prejudice for failing to raise a claim of ineffective assistance of counsel based on his attorney's failure to inform him of the deportation consequences of his guilty plea. *Id.* ¶ 13. In *Gutierrez*, however, the defendant specifically argued that "had he been aware of those consequences, he would have insisted on going to trial *because the evidence against him was not overwhelming.*" (Emphasis added.) *Id.* ¶ 15. The court found that the evidence against the defendant was overwhelming and, therefore, the defendant could not establish prejudice. *Id.* ¶ 45.

¶ 41 Unlike the defendant in *Gutierrez*, the claimed prejudice to defendant is not based on the strength of the evidence. Rather, defendant here claims he was prejudiced because he would rather have faced trial or entered a different plea rather than be deported, and, under the circumstances, that decision would have been perfectly reasonable. Therefore, defendant has made a substantial showing of a constitutional violation. His allegations, if proven at an

evidentiary hearing, would entitle him to relief. Accordingly, the trial court's judgment granting the State's motion to dismiss is reversed, and the cause is remanded for third-stage proceedings on the postconviction allegations.

¶ 42                                    CONCLUSION

¶ 43    For the foregoing reasons, the circuit court of Cook County is reversed, and the cause is remanded with directions.

¶ 44    Reversed.