2022 IL App (2d) 190951
No. 2-19-0951
Opinion filed March 14, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-375 |
| JOHNNY TAYLOR, | ) ) ) | Honorable Brian F. Telander, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court, with opinion.
Justices Hutchinson and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a bench trial, defendant, Johnny Taylor, was convicted of four counts of retail theft (720 ILCS 5/16-25(a)(1) (West 2014)) and one count of burglary (*id.* § 19-1(a)). The court sentenced him to concurrent terms totaling eight years in prison. Defendant appealed. After two attorneys had filed and withdrawn appearances on defendant's behalf and no further appearance was filed, we dismissed defendant's appeal. On March 13, 2019, defendant petitioned for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)), arguing that his appellate counsel was ineffective for failing to proceed with the appeal. Nine days later, counsel filed his appearance and brief, and this court reinstated defendant's direct appeal. Three days later, the trial court *sua sponte* dismissed defendant's petition, finding it moot because the direct appeal

was reinstated. Thereafter, on May 9, 2019, defendant filed another postconviction petition. The trial court *sua sponte* dismissed it, finding that it was a successive postconviction petition under the Act and that defendant filed it without leave of court. Defendant timely appeals from that dismissal. At issue is whether (1) the trial court erred in treating defendant's May 9, 2019, petition as a successive postconviction petition under the Act and (2) if the court did err, what remedy should we afford defendant. We determine that (1) the trial court erred in treating defendant's May 9, 2019, petition as a successive postconviction petition under the Act and (2) this cause must be remanded for second-stage proceedings under the Act. Accordingly, we reverse the trial court's dismissal of defendant's May 9, 2019, petition and remand this cause for second-stage proceedings on the petition.

¶ 2                                  I. BACKGROUND

¶ 3      After the court sentenced defendant in the underlying case, the trial court appointed counsel to represent defendant on appeal. Defendant then filed a notice of appeal. Approximately nine months later, in September 2018, the appellate defender moved to withdraw, as defendant wanted to obtain private counsel to represent him. We granted that motion.

¶ 4      Defendant obtained representation from the Illinois Defense League (Defense League).[1] In December 2018, Brittany Boma, defendant's attorney from the Defense League, moved to withdraw because she had obtained new employment that created a conflict with her representing defendant. On January 7, 2019, we granted that motion. In our order, we advised defendant that he had until January 28, 2019, to file his appearance or that of substitute counsel. We also advised

_____

[1] As the parties note, this organization is sometimes referred to in the record as the Criminal Defense League.

defendant that we would dismiss his appeal if no appearance were filed. On January 28, 2019, we dismissed defendant's appeal because he failed to comply with our January 7, 2019, order.

¶ 5    Almost two months later, on March 12, 2019, the trial court spread of record the mandate dismissing defendant's appeal. On March 13, 2019, defendant filed from prison a postconviction petition.[2] He claimed that Boma was ineffective because she failed to file a timely notice of appearance and that this resulted in the dismissal of defendant's direct appeal.

¶ 6    On March 22, 2019, while that petition was pending in the trial court, we (1) *sua sponte* recalled the January 28, 2019, mandate dismissing defendant's direct appeal, (2) granted defendant's motion to substitute Nathaniel Frenkel as his attorney, and (3) granted Frenkel's motion to extend the time to file defendant's opening brief and to file the brief *instanter*.[3]

¶ 7    Three days later, on March 25, 2019, the trial court *sua sponte* dismissed defendant's petition and ordered "[t]he clerk *** to send a copy of this order to [defendant]." The trial court found:

---

[2] The handwritten proof of service attached to the petition indicates that the petition was placed in the mail on a date in March but leaves unfilled the blank designated for that date. The postmark date is March 13, 2019. This is sufficient to establish when the petition was filed. See *People v. Hansen*, 2011 IL App (2d) 081226, ¶ 14.

[3] After the State filed a brief, Frenkel moved to withdraw. We granted that motion on December 3, 2019. Defendant moved to amend Frenkel's brief. We denied that motion. Defendant filed an appearance and then moved this court to appoint counsel to represent him on appeal. We denied that motion. On January 13, 2020, defendant moved to vacate the reinstatement of his direct appeal. We granted that motion on January 15, 2020.

"[A]s a matter of law, the issues presented in [defendant's] postconviction petition, even though they can be simultaneous to a [direct] appeal, the issues are now moot because the single issue was that he was denied that right [to appeal], and the Appellate Court reversed the decision. So, therefore, the post[ ]conviction petition is dismissed."

¶ 8    Like the trial court's oral pronouncement, the trial court's written order provided:

"In view of the fact that the Appellate Court has recalled the mandate dismissing the appeal and that *** defendant's appellate attorney has now filed an appearance and brief, the issue in *** defendant's post[ ]conviction petition has become moot and is hereby dismissed."

Defendant appealed from the order dismissing his petition as moot, but we ultimately dismissed the appeal.[4]

¶ 9    On May 9, 2019, defendant filed another postconviction petition in the trial court. Defendant claimed that the trial court erred in dismissing the March 13, 2019, petition as moot. He also alleged that this court was without jurisdiction to reinstate his direct appeal and that the Defense League engaged in the unauthorized practice of law. On June 24, 2019, defendant filed an amendment to his May 9, 2019, petition. Defendant alleged that, but for his appellate attorney's failure to meet the filing requirements, his direct appeal would have succeeded on the merits.

_____

[4] On appeal, this court ordered defendant to file a docketing statement and pay the filing fee by April 23, 2019. Defendant failed to do so. On May 10, 2019, this court granted defendant an additional seven days to file a docketing statement and pay the filing fee. Again, defendant failed to do so. On May 22, 2019, we dismissed defendant's appeal of the order finding his first petition moot.

¶ 10    On July 24, 2019, the trial court determined that the May 9, 2019, petition was a successive postconviction petition under the Act. The court also found that defendant filed the successive petition without leave of court. Because defendant had not obtained leave of court, the trial court dismissed the May 9, 2019, petition. In doing so, the trial court asserted that it dismissed defendant's March 13, 2019, petition after finding it frivolous or patently without merit.

¶ 11    Defendant timely moved the trial court to reconsider the dismissal of the May 9, 2019, petition. The court denied the motion and found that, even if it considered defendant's May 9, 2019, petition under the cause-and-prejudice test applicable to successive postconviction petitions, the court would not grant defendant leave to file the petition, as defendant failed to establish cause.

¶ 12                                II. ANALYSIS

¶ 13    At issue in this appeal is whether (1) the trial court erred in treating defendant's May 9, 2019, petition as a successive postconviction and (2) if the trial court erred, what remedy should we afford defendant. In resolving these issues, we believe that a brief discussion of the three procedural stages of the Act, and what steps a defendant must take to file a successive petition, is warranted.

"At stage one, section 122-2.1 [of the Act] directs the trial court to dismiss the petition if the [defendant] is sentenced to imprisonment and if the court determines that 'the petition is frivolous or is patently without merit.' [Citation.] Section 122-2.1(a) [of the Act] requires the court to examine the petition and enter an order '[w]ithin 90 days after the filing and docketing of each petition.' [Citation.] Section 122-2.1 does not contemplate any input from the State by responsive pleading or otherwise. [Citation.] Under section 122-2.1, the trial court is concerned merely with determining whether the petition's allegations sufficiently demonstrate a constitutional infirmity that would necessitate relief

under the Act. [Citation.] At the first stage, the trial court does not rule on the merits of the petition; rather, the trial court simply decides if the petition on its face is frivolous or patently without merit. [Citation.] In order to withstand dismissal at stage one, the postconviction petition need only contain a simple statement that presents the gist of a constitutional claim for relief that is meritorious when considered in view of the record. [Citation.] If a petition is not dismissed under section 122-2.1, then it is to be docketed and considered in accordance with sections 122-4 through 122-6 of the Act. [Citation.]

At stage two, section 122-4 [of the Act] provides for the appointment of counsel if the petitioner has no means to procure counsel. [Citation.] Also at stage two, section 122-5 [of the Act] directs that the State shall either answer or move to dismiss the petition. [Citation.] At this stage, the trial court must determine whether the petition and any accompanying documents make a substantial showing of a constitutional violation. [Citation.]

Finally, at stage three, section 122-6 [of the Act] gives the trial court the discretion to hold a hearing and provides that the court may receive proof by affidavits, depositions, oral testimony or other evidence. [Citation.]" *People v. Sawczenko*, 328 Ill. App. 3d 888, 892-93 (2002).

¶ 14 The standards for filing a successive postconviction are as follows:

"The Act contemplates the filing of a single petition. [Citation.] However, section 122-1(f) of the Act provides an exception to this rule, permitting a successive petition if the defendant first obtains permission from the [trial] court after demonstrating both cause for failing to bring the claim in his initial postconviction proceeding and resulting prejudice. [Citation.] To establish cause, a defendant must show some objective factor external to the

defense that impeded his ability to raise the claim in the initial postconviction proceeding. [Citations.] To establish prejudice, a defendant must show that the claimed constitutional error so infected the proceeding that the result violated due process. [Citations.] The court should deny the motion for leave to file a successive petition only when it is clear from a review of the proposed petition and supporting documents that the defendant's claim fails as a matter of law or where those submissions are insufficient to justify further proceedings. [Citation.]" *People v. Simental*, 2021 IL App (2d) 190649, ¶ 12.

"A [defendant] is to get one complete opportunity to show that his constitutional rights were substantially denied." *Sawczenko*, 328 Ill. App. 3d at 897; see also *People v. Polansky*, 39 Ill. 2d 84, 86 (1968) ("Granting a defendant one complete opportunity to show a substantial denial of his constitutional rights fully satisfies the fundamentals of due process ***.").

¶ 15     We now consider the issues defendant raises on appeal.

¶ 16                    A. Was the May 9, 2019, Petition a Successive Petition?

¶ 17     The first issue we address is whether the trial court erred in treating defendant's May 9, 2019, petition as a successive petition for purposes of the Act. Because this issue raises a pure question of law, our review is *de novo*. *People v. Anderson*, 2021 IL App (2d) 190128, ¶ 16.

¶ 18     The trial court could consider defendant's May 9, 2019, petition as a successive postconviction petition under the Act only if the trial court properly treated his earlier petition (filed on March 13, 2019) as an initial petition. Resolving whether the court correctly treated the March 13, 2019, petition as a first petition requires us to examine how the trial court disposed of it.[5] It is undisputed that defendant's March 13, 2019, petition was dismissed. On June 24, 2019,

---

[5] At issue here is not how the trial court characterized the March 13, 2019, petition during

the trial court asserted that it dismissed the March 13, 2019, petition because it was frivolous or patently without merit. A postconviction petition is "frivolous or patently without merit only if it has no 'arguable basis either in law or in fact.' " *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010) (quoting *People v. Hodges*, 234 Ill. 2d 1, 16 (2009)). "A petition lacks an arguable basis in either law or fact if it is based on an indisputably meritless legal theory or fanciful factual allegations." *People v. Munz*, 2021 IL App (2d) 180873, ¶ 13. " '[A] meritless legal theory is one completely contradicted by the record, while fanciful factual allegations may be fantastic or delusional.' " *Id.* (quoting *People v. Knapp*, 2020 IL 124992, ¶ 45).

¶ 19    An examination of the trial court's oral pronouncement and written order indicates that the trial court dismissed the March 13, 2019, petition as moot, not as frivolous or patently without merit. " '[A] moot question is one that existed but because of the happening of certain events has ceased to exist and no longer presents an actual controversy over the interest or rights of the party \*\*\*.' " *People v. Coe*, 2018 IL App (4th) 170359, ¶ 47 (quoting *Ahmad v. Board of Election Commissioners*, 2016 IL App (1st) 162811, ¶ 9).

¶ 20    Without citing any authority, the State argues that a finding of mootness means that the petition is frivolous or patently without merit. We have not found any authority that associates mootness with being frivolous or patently without merit. However, it is well established that " ' "frivolous or patently without merit" encompasses the common-law doctrines of *res judicata*

---

the proceedings on that petition. The record clearly reflects that the court treated the March 13, 2019, petition as a postconviction petition. What is at issue is how the trial court resolved the March 13, 2019, petition and the effect that that resolution had on proceedings for the May 9, 2019, petition.

and forfeiture.' " *Munz*, 2021 IL App (2d) 180873, ¶ 28 (quoting *People v. Kane*, 2013 IL App (2d) 110594, ¶ 26). "*Res judicata* bars the consideration of issues that were previously raised and decided on direct appeal, whereas forfeiture bars any claims that could have been raised on direct appeal but were not." *Id.*

¶ 21    We must determine whether "frivolous or patently without merit" encompasses mootness like it does *res judicata* and forfeiture. Our supreme court has considered whether timeliness (see *People v. Boclair*, 202 Ill. 2d 89 (2002)) and, more recently, standing (see *People v. Johnson*, 2021 IL 125738) are, like *res judicata* and forfeiture, bases for dismissing a petition as frivolous or patently without merit.

¶ 22    In addressing whether timeliness could be a basis to summarily dismiss a postconviction petition at stage one of postconviction proceedings, the court in *Boclair* defined what "frivolous," "patently," and "merit" mean under the Act. *Boclair*, 202 Ill. 2d at 101. The court determined that " '[f]rivolous' has been defined as 'of little weight or importance: having no basis in law or fact.' " *Id.* (quoting Webster's Third New International Dictionary 913 (1993)). " '[P]atently' means 'Clearly, Obviously, Plainly.' " *Id.* (quoting Webster's Third New International Dictionary 1654 (1993)). " '[M]erit' means 'legal significance, *standing*, or importance.' " (Emphasis added.) *Id.* (quoting Webster's Third New International Dictionary 1414 (1993)). The court noted that "[t]hese terms do not include issues of timeliness." *Id.* The court also observed that "time is not an inherent element of the right to *bring* a post[ ]conviction petition." (Emphasis in original.) *Id.* Thus, the court held that timeliness, unlike *res judicata* and forfeiture, is not a basis to summarily dismiss a postconviction petition for being frivolous or patently without merit. See *id.* at 102 ("At th[e] initial stage of the proceedings *** the [trial] court should only determine whether the petition alleges

constitutional deprivations. The process at the summary review stage measures a petition's substantive virtue ***.").

¶ 23    Later, in *Johnson*, our supreme court considered whether standing could be a basis for summarily dismissing a petition as frivolous or patently without merit at stage one of postconviction proceedings. See *Johnson*, 2021 IL 125738, ¶ 50. In doing so, the court observed that "[s]tanding under the Act *** involves a conclusion of law in that the legislature has identified who may institute proceedings and the conditions under which the proceedings may be brought." *Id.* ¶ 49. Thus, the court held "that, where a defendant lacks standing under the Act because he is not 'imprisoned in the penitentiary' [citation], a claim brought under the Act is necessarily 'frivolous' or 'patently without merit' [citation]." *Id.* ¶ 50.

¶ 24    Here, we cannot conclude that a finding of mootness means that the petition is frivolous or patently without merit. Unlike standing, and like timeliness, "mootness" does not fall within the definitions of "frivolous," "patently," or "merit." See *Boclair*, 202 Ill. 2d at 101 (noting that merit encompasses standing). Moreover, unlike standing, mootness is not an inherent element that needs to be satisfied in *bringing* a petition. A defendant does not need to establish that an actual controversy exists. If a defendant needed to establish that an actual controversy existed, there would be little need for the court to evaluate a petition at the first or second stages of postconviction proceedings. Further, like timeliness, a finding that a petition is moot does not concern evaluating whether a petition raises any claim of constitutional deprivation. Indeed, mootness, unlike *res judicata*—which applies when there is final judgment on the merits—is not even a finding on the merits. See *Gassman v. Clerk of the Circuit Court*, 2017 IL App (1st) 151738, ¶ 33 ("A mootness finding is not a judgment on the merits and will not support a finding of *res judicata* in a future case."). Because we determine that mootness does not mean being frivolous or patently

without merit, we conclude that the trial court, in reviewing the May 9, 2019, petition, improperly treated defendant's March 13, 2019, petition as a first petition under the Act. Because of the improper treatment of the March 13, 2019, petition under the Act, the trial court incorrectly treated defendant's May 9, 2019, petition as a successive petition under the Act.

¶ 25    Even if we could associate mootness with being frivolous or patently without merit, we still would not conclude that defendant's May 9, 2019, petition was a successive petition requiring leave of court to file. Instructive here is *Sawczenko*. There, after the defendant was sentenced, he filed in September 1997 a petition for postconviction relief, claiming that he was unfit to plead guilty and should have been afforded a fitness hearing. *Sawczenko*, 328 Ill. App. 3d at 890-91. The petition proceeded to stage two, and the trial court appointed counsel, who filed an amended postconviction petition. *Id.* at 891. The State moved to dismiss, the trial court denied the motion, and the State filed an answer. *Id.* When the parties next appeared before the trial court, postconviction counsel advised the court that the defendant wished to withdraw his petition based on religious beliefs and some research he had done. *Id.* After extensively admonishing the defendant about the consequences of withdrawing his petition, the court granted the defendant's motion to withdraw the petition. *Id.*

¶ 26    Over one year after withdrawing the September 1997 petition, the defendant filed in August 2000 another petition for postconviction relief. *Id.* He argued that (1) postconviction counsel was ineffective for not sufficiently conferring with him about withdrawing his petition, (2) extreme religious practices caused him to suffer from insomnia, and (3) his insomnia rendered him unable to understand what he was doing when he withdrew the September 1997 petition. *Id.* At a hearing, the defendant made clear that he wished to reinstate the allegations he made in the September 1997 petition and raise additional issues in a supplemental petition. *Id.* at 892. The trial court found that

the August 2000 petition did not " 'state a basis upon which a [*sic*] relief [could] be drawn upon the [A]ct.' " *Id.* In its written order, the court found the petition to be " 'frivolous and patently without merit.' " *Id.*

¶ 27 On appeal, we considered whether the dismissal of the August 2000 petition could be affirmed on the ground—not considered in the trial court—that the petition was "an improper successive postconviction petition." *Id.* at 897. We found that it could not. *Id.* In doing so, we noted that, although "[t]he Act contemplates the filing of [only] one petition," the mere fact that a second petition was filed did not mean that the second petition should automatically be considered a successive petition. *Id.* After recognizing that "[a defendant] is to get one complete opportunity to show that his constitutional rights were substantially denied," we determined that a "trial court may allow the filing of successive petitions when proceedings on a petition were deficient in some fundamental way." *Id.* To that end, we stated:

"Nothing in the record indicates that the proceedings on [the] defendant's first postconviction petition were deficient. However, in defendant's second postconviction petition, he alleges that counsel appointed to represent him on his first petition was ineffective for allowing him to withdraw his petition without conferring with him sufficiently. We believe that this sufficiently alleges a deficiency in the proceedings on [the] defendant's first postconviction petition." *Id.*

The court reviewed the propriety of the stage-one dismissal of the August 2000 petition. *Id.* at 897-98.

¶ 28 In our view, the circumstances of this case provide a stronger basis than in *Sawczenko* for allowing defendant to file his May 9, 2019, petition as an initial petition, without having to satisfy the cause-and-prejudice test. Specifically, unlike in *Sawczenko*, it was arguably the recall of this

court's mandate that justified the trial court's dismissal of the March 13, 2019, petition as moot. That dismissal occurred shortly after defendant filed it and before defendant had any opportunity to withdraw it. Moreover, unlike in *Sawczenko*, where the defendant was in court and played a part in the withdrawal of his first (September 1997) petition, defendant's March 13, 2019, petition was dismissed without him or counsel being in court or having any input. Further, unlike in *Sawczenko*, where the defendant received an opportunity to show that his constitutional rights were substantially violated, defendant here had no similar opportunity. Under the unique facts of this case, we must conclude that, even if mootness means being frivolous or patently without merit under the Act, defendant's May 9, 2019, petition must be considered his first under the Act.

¶ 29    Lastly, under the Illinois Constitution, "the right to appeal a criminal conviction is fundamental." *People v. Ross*, 229 Ill. 2d 255, 268 (2008). Further, section 122-1(f)'s reference to "one petition *** without leave of the court" (725 ILCS 5/122-1(f) (West 2018)) indicates one complete opportunity to collaterally attack "the proceedings which resulted in his or her conviction" (*id.* § 122-1(a)(1)). Thus, where, as here, a defendant has been denied that opportunity, he should be " 'restored to the procedural posture he would have enjoyed if he had been represented by effective counsel who had timely filed a notice of appeal.' " *People v. Little*, 2012 IL App (5th) 100547, ¶ 17 (quoting *Urinyi v. United States*, 607 F.3d 318, 321 (2d Cir. 2010)). Moreover, not every petition numerically identified as a second petition is "second or successive" under the Act. See *id.* ¶¶ 20-21; see also *People v. Wilson*, 2014 IL App (1st) 113570, ¶¶ 40-41.

¶ 30    In *Little*, the question before the reviewing court was whether a subsequent postconviction petition is considered successive under the Act, where the initial petition sought only to reinstate the right to a direct appeal that was lost due to counsel's ineffectiveness. *Little*, 2012 IL App (5th)

100547, ¶ 19. The defendant filed a *pro se* postconviction petition alleging his trial counsel was ineffective for failing to file a notice of appeal, despite the defendant's request to do so. *Id.* ¶ 6.

¶ 31     The defendant appealed his convictions and sentence after being sentenced to two consecutive three-year terms of imprisonment. *Id.* ¶ 3. His convictions were affirmed, and his case was remanded for resentencing because it was "not clear from the record what motivated the trial court to order that the sentences" be served consecutively. (Internal quotation marks omitted.) *Id.* ¶ 4. On remand, the trial court resentenced the defendant and imposed consecutive three-year terms again. *Id.* The defendant was ultimately granted leave to file a late notice of appeal from the resentencing order due to filing a *pro se* postconviction petition alleging his trial counsel was ineffective for failing to file a notice of appeal. *Id.* ¶¶ 6, 8. After the appellate court affirmed the trial court's judgment, the defendant filed a second *pro se* postconviction petition. The trial court construed that petition as a request for leave to file a successive postconviction petition, which it denied. *Id.* ¶ 10. The appellate court held that the defendant filed his first postconviction petition to regain his right to a direct appeal that he lost due to counsel's ineffectiveness. *Id.* ¶ 21. Thus, the first petition should not have been treated as a postconviction petition, because it was not a true collateral attack on his conviction and sentence. *Id.* ¶ 21. Accordingly, his second petition was not a successive postconviction petition. *Id.* ¶ 19.

¶ 32                                B. Remedy

¶ 33     Given our conclusion that defendant's May 9, 2019, petition was his first postconviction petition, we next must address what remedy we should afford defendant for the trial court's failure to consider within 90 days whether the May 9, 2019, petition was frivolous or patently without merit. See 725 ILCS 5/122-2.1(a)(2) (West 2018). Defendant argues that, because the court made no such ruling on his May 9, 2019, petition by August 7, 2019—90 days after it was filed—the

dismissal of his May 9, 2019, petition must be remanded for second-stage proceedings under the Act. The State argues that, given the unique circumstances of this case, the dismissal of defendant's May 9, 2019, petition must be remanded for proceedings under the first stage of the Act.

¶ 34    Resolving this issue requires us to examine section 122-2.1 of the Act. In relevant part, that section provides:

"(a) Within 90 days after the filing and docketing of each petition, the court shall examine such petition and enter an order thereon pursuant to this Section.

* * *

(2) If the petitioner is sentenced to imprisonment and the court determines the petition is frivolous or is patently without merit, it shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision. ***

(b) If the petition is not dismissed pursuant to this Section, the court shall order the petition to be docketed for further consideration in accordance with Sections 122-4 through 122-6 [of the Act]." *Id.* § 122-2.1(a)(2), (b).

¶ 35    In construing section 122-2.1(a)(2), courts have determined that a trial court has 90 days from the filing and docketing of a postconviction petition to summarily dismiss it as frivolous or patently without merit. Further, a trial court's failure to do so within the 90 days requires the court to docket the petition for further proceedings under sections 122-4 through 122-6 of the Act. *People v. Porter*, 122 Ill. 2d 64, 85 (1988) (the time requirement contained in section 122-2.1(a)(2) is mandatory); *People v. Volkmar*, 363 Ill. App. 3d 668, 670-71 (2006).

¶ 36    Here, defendant's May 9, 2019, petition was not summarily dismissed as frivolous or patently without merit within 90 days of filing. Rather, on July 24, 2019, within 90 days after the

May 9, 2019, petition was filed, the trial court dismissed it because it found that (1) the May 9, 2019, petition was a successive postconviction petition under the Act and (2) defendant filed it without leave of court. Consistent with the remedy in *Little*, 2012 IL App (5th) 100547, ¶ 24, we reverse the dismissal of the petition and remand this case for further proceedings under sections 122-4 through 122-6 of the Act because the trial court did not review the May 9, 2019, petition within 90 days to determine whether it was frivolous or patently without merit. See 725 ILCS 5/122-2.1(b) (West 2018).

¶ 37                                   III. CONCLUSION

¶ 38    For the reasons stated, we reverse and remand the cause to the circuit court of Du Page County for a second-stage postconviction proceeding.

¶ 39    Reversed and remanded with directions.

---

**No. 2-19-0951**

---

| | |
|---|---|
| **Cite as:** | *People v. Taylor*, 2022 IL App (2d) 190951 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 15-CF-375; the Hon. Brian F. Telander, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Jeffrey Bruce Kirkham, of State Appellate Defender's Office, of Elgin, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman, Assistant State's Attorney, of counsel), for the People. |

---