NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 231257-U

NO. 4-23-1257

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 4, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Adams County |
| RICHARD L. HOOD, | ) | No. 18CF148 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Zachary P. Boren, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Knecht and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, holding (1) defendant's successive postconviction petition could not be deemed his initial postconviction petition because there were no deficiencies in the proceedings on the initial petition and (2) alternatively, the trial court properly denied defendant's motion to file a successive postconviction petition because he failed to satisfy the cause-and-prejudice test.

¶ 2    Following a jury trial, defendant, Richard L. Hood, was convicted of three counts of criminal sexual assault (720 ILCS 5/11-1.20(a)(1) (West 2018)) and one count of unlawful restraint (*id.* § 10-3), and he was subsequently sentenced to an aggregate term of 30 years in prison. This court affirmed defendant's convictions and sentences on direct appeal. See *People v. Hood*, 2022 IL App (4th) 200260, ¶ 141.

¶ 3    While defendant's direct appeal was pending, he *pro se* filed a postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). The trial court summarily dismissed his petition, finding that the issues he raised were

(1) not new, (2) going to be addressed on direct appeal, or (3) frivolous or patently without merit. Defendant appealed. This court allowed defendant to proceed *pro se*, as he requested, and we ultimately dismissed the appeal for want of prosecution after defendant failed to file a brief.

¶ 4        Thereafter, defendant moved to file a successive postconviction petition. See 725 ILCS 5/ 122-1(f) (West 2022). The trial court denied the motion.

¶ 5        Defendant appeals that denial, arguing (1) his successive postconviction petition must be treated as his first because the proceedings on the initial petition were deficient and (2) alternatively, the trial court erred in denying him leave to file a successive petition. We affirm.

¶ 6                                I. BACKGROUND

¶ 7        The facts of this case are well known to the parties and this court. Accordingly, we recite here only those facts necessary to resolve the issues defendant raises in this appeal.

¶ 8                    A. The Conviction and Filing of the Direct Appeal

¶ 9        In February 2018, the State charged defendant with criminal sexual assault and unlawful restraint after he lured B.L.M. to his home under the guise that she could do her laundry at his house, and he would pay her to clean his home. While in the house, defendant kept B.L.M. in his bedroom for several hours and repeatedly assaulted her.

¶ 10        In April 2019, a jury found defendant guilty of all counts, and the trial court subsequently sentenced defendant to a total of 30 years in prison.

¶ 11        In June 2020, after defendant was sentenced, he filed a notice of appeal, and appellate counsel was appointed to represent him.

¶ 12        In November 2020, appellate counsel moved to withdraw and asked this court to allow defendant to proceed *pro se*. We denied both motions. Defendant moved to reconsider and

appealed to the supreme court via a *mandamus* action.

¶ 13    In January 2021, we denied defendant's motion to reconsider, explaining that "[defendant] has presented no valid reason to believe the Office of the State Appellate Defender cannot represent his interests adequately."

¶ 14                    B. The Initial Postconviction Petition

¶ 15    In February 2021, while defendant's direct appeal was pending in this court, defendant *pro se* filed his initial postconviction petition. His allegations were handwritten on a preprinted form. Under the section that asked defendant to specify the constitutional rights he was denied, he asserted, in total, the following:

> "I want to raise all the issues that I raised and tried to raise in all my pre and post trial motions and the newly discovered issues discovered during [another case]. I want a different judge to consider [the] petition. Also, see my wife's affidavit filed in her case *** and the affidavit from Cameron Coulter I'm mailing with this."

Attached to defendant's petition was Coulter's affidavit, which was (1) written by defendant, (2) not notarized, and (3) dated February 4, 2019, two months before defendant's trial began. Coulter attested he (1) had provided drugs to defendant in the past, (2) did not provide defendant with drugs on the day of the incident, and (3) had partied with defendant and women with whom he and defendant had sex.

¶ 16    Thereafter, defendant filed four supplements to his petition, one on February 22, 2021, two on February 26, 2021, and one on March 9, 2021. In these supplements, defendant claimed (1) the State engaged in various acts of misconduct; (2) the State withheld from the jury recordings of phone calls between B.L.M. and her boyfriend, who was in jail; (3) a nurse lied

about bruises on B.L.M.'s neck; (4) "[h]ad there been any bruise, pictures of it would have been mandated"; (5) a therapist who treated B.L.M. knew about and was prejudiced by another woman who falsely accused defendant of holding her against her will for hours and beating her; (6) Betsy Bier, an assistant public defender appointed to represent defendant after trial who was subsequently dismissed when defendant was allowed to proceed *pro se*, was ineffective because she failed to raise "all the relevant and meritorious issues [defendant] raised and tried to raise," including that the therapist who treated B.L.M. also treated another woman who accused defendant of similar offenses; and (7) he was not allowed to see the warrant for his arrest where, regarding the bond amount, a "5" was written over a "0." Attached to defendant's last supplement was his wife's affidavit, wherein she attested that (1) she and defendant wanted to help B.L.M., (2) B.L.M. sexually assaulted defendant, and (3) defendant never harmed B.L.M.

¶ 17          In March 2021, the trial court, which construed defendant's initial petition and the supplements as one postconviction petition, summarily dismissed the petition. The court found, "Defendant's petition fail[ed] to clearly state the details as to how he believes his constitutional rights were violated." After noting defendant "appear[ed]" to focus on a freestanding actual innocence claim based on newly discovered evidence, the court found that some of the new evidence was addressed in another case of defendant's that the State had nol-prossed. Thus, the evidence was not new. The court also found that the following evidence was not new: (1) allegations of prosecutorial misconduct, which the court addressed during trial and defendant raised in a letter to his appellate counsel; (2) the recorded phone calls between B.L.M. and her boyfriend, which were tendered to defendant during discovery; (3) Coulter's affidavit, which did not support an actual-innocence claim; (4) issues concerning the amount of bond on defendant's arrest warrant, which were addressed before trial; and (5) statements defendant's wife made in

her affidavit.

¶ 18 After the trial court noted that defendant "[c]ertainly" could initiate postconviction proceedings while his direct appeal was pending, the court observed defendant "allege[d] that on appeal he is seeking a remand for reconsideration based upon newly discovered evidence." The court asserted it "must assume that this precise issue of newly discovered evidence is the one that [defendant] has raised on appeal." The court found that "*[n]one* of this information could be construed as newly discovered evidence." (Emphasis added.) The court concluded, "[Defendant's petition] address[ed] issues being raised on appeal in this case and all other issues are frivolous and patently without merit." Accordingly, the court summarily dismissed defendant's petition at the first stage.

¶ 19 In April 2021, defendant filed a motion to have the trial court reconsider the summary dismissal of his initial postconviction petition. In May 2021, he filed a supplement to his motion. In June 2021, the court denied the motion to reconsider, noting that nothing in defendant's motion or supplement was new and unavailable to defendant when he filed his initial postconviction petition.

¶ 20 C. The Direct Appeal Proceedings and Appeal of the Initial Petition's Dismissal

¶ 21 In July 2021, appellate counsel filed a brief on defendant's behalf in the direct appeal.

¶ 22 In August 2021, defendant filed two supplements to the *mandamus* action brought in the supreme court, noting in one supplement he was attempting to appeal this court's refusal to allow him to proceed *pro se* on direct appeal. The supreme court denied defendant's mandamus action in September 2021.

¶ 23 In January 2022, appellate counsel appointed to represent defendant in the appeal

from the summary dismissal of his postconviction petition moved to withdraw and permit defendant to proceed *pro se*, noting defendant "expressed a desire to represent himself in th[e] appeal." This court granted the motion in February 2022 and gave defendant until April 2022 to file a brief. Thereafter, defendant moved to have counsel appointed to represent him. In May 2022, this court denied his motion for the appointment of counsel on appeal and extended the time in which defendant had to file a brief. In August 2022, after "grant[ing] multiple motions for extension of time" for defendant to file a brief, this court dismissed defendant's appeal from the summary dismissal of his initial postconviction petition because he "failed to file a brief."

¶ 24    In November 2022, this court affirmed defendant's convictions and sentences on direct appeal. See *Hood*, 2022 IL App (4th) 200260, ¶ 141.

¶ 25              D. The Successive Postconviction Petition

¶ 26    In July 2023, defendant filed a motion for leave to file a successive postconviction petition. In his motion, he argued he was forced to proceed *pro se* in the appeal from the summary dismissal of his initial postconviction petition because counsel appointed to represent him in both his direct appeal and initial petition appeal "fail[ed] to raise many meritorious issues." For example, defendant alleged that during his review of the common law record, which he received in February 2022, he discovered for the first time a statement of facts from the State wherein the State indicated "bruising was noted on [B.L.M.'s] neck and photographed, consistent with being choked." He also raised many vague claims of ineffective assistance of counsel that concerned ancillary matters, such as counsel's ineffectiveness for failing to (1) obtain his mother's medical records and (2) protect him from unspecified prejudices the State and the trial court held against him. Regarding the court's actions, defendant argued it erred by summarily dismissing his initial postconviction petition because it "misunderstood *** [defendant] was

- 6 -

already raising those issues on direct appeal." Defendant asserted claims of misconduct against the trial court, this court, and the supreme court, which appeared to be related to not filing pleadings or failing to tender the record to him. He also repeated many issues he had raised earlier, such as his claim that the "0" on his arrest warrant was changed to a "5" and the therapist who treated B.L.M. also treated another woman with whom defendant was familiar.

¶ 27　　　　Thereafter, defendant filed four supplements to his motion for leave to file a successive postconviction petition, one of which was filed after the trial court ruled on the motion. In the three supplements filed before the court's ruling, defendant again referred to his many meritorious issues and raised issues he raised previously, including that he was innocent. Defendant never specifically alleged that he had cause for not raising issues earlier or that he was prejudiced by this failure.

¶ 28　　　　In August 2023, the trial court, which construed defendant's first three supplements as part of his motion for leave to file a successive postconviction petition, denied defendant's motion in a thorough, eight-page order. The court found, "[T]he vast majority of the filings do not indicate that [defendant] had cause for his failure to bring these claims in his initial post-conviction proceedings, or that prejudice result[ed] from that failure." The court continued, "Virtually everything the Defendant raises now was previously discussed, and there is no suggestion that the Defendant would have been unable to bring [them] as part of his initial post-conviction petition."

¶ 29　　　　That said, the trial court did consider whether photographs of bruising on B.L.M.'s neck were taken and withheld from defendant. (The court questioned whether defendant was unaware of this issue during earlier proceedings, noting that the statement of facts was mailed to defendant on November 4, 2019, with proof of service.) Presuming, as defendant

alleged, he was unaware of this statement of facts until February 2022, and thus defendant had cause for not raising it beforehand, the court nevertheless determined defendant failed to establish prejudice because several other pieces of evidence produced at trial (1) indicated B.L.M. had bruises on her neck after the incident and (2) established defendant's guilt. Therefore, even if photographs had been taken of the bruising and withheld from defendant, that would not have affected the outcome of the trial.

¶ 30　　　The trial court also addressed defendant's innocence claim, noting that defendant used this term throughout his filings. The court found, "[N]othing contained in the Defendant's new filings can set forth such a claim." The court continued, "Even assuming the discrepancy regarding whether pictures were taken of bruising to [B.L.M.'s] neck was newly discovered, material[,] and not cumulative, the Court finds that it is not of such a conclusive character that it would probably change the result on retrial." In so finding, the court quoted this court's determination on direct appeal that " 'the evidence of defendant's guilt' in this case was 'overwhelming.' " (quoting *Hood*, 2022 IL App (4th) 200260, ¶ 123).

¶ 31　　　In September 2023, defendant filed a motion to reconsider the trial court's order denying him leave to file a successive postconviction petition.

¶ 32　　　In October 2023, the trial court denied the motion to reconsider, which it considered along with defendant's fourth supplement to his motion for leave to file a successive postconviction petition and two other pleadings. The court found, "Defendant is 'simply reargu[ing] the case and present[ing] the same arguments and authority already considered.' " (quoting *People v. Teran*, 376 Ill. App. 3d 1, 5 (2007)).

¶ 33　　　This appeal followed. (Counsel appointed to represent defendant on appeal moved to withdraw after filing a brief. We subsequently denied the motion.)

¶ 34                                    II. ANALYSIS

¶ 35        Defendant appeals that denial, arguing (1) his successive postconviction petition

must be treated as his first because the proceedings on the initial petition were deficient and

(2) alternatively, the trial court erred in denying him leave to file a successive petition. We

affirm.

¶ 36        A. Successive Postconviction Petition Treated as the Initial Petition

¶ 37                                    1. *The Law*

¶ 38        The Act's referring to "one petition *** filed *** without leave of the court" (725

ILCS 5/122-1(f) (West 2020)) "indicates one complete opportunity to collaterally attack 'the

proceedings which resulted in [the defendant's] conviction.' " *People v. Taylor*, 2022 IL App

(2d) 190951, ¶ 29 (quoting 725 ILCS 5/122-1(a)(1) (West 2018)). Where deficiencies arose

during the proceedings on that one opportunity—namely, the initial postconviction petition—a

successive postconviction must be treated as the initial one, which can be filed without leave of

court. *Id.*

¶ 39        "Deficiencies" in this context concern a defendant's lost opportunity to

collaterally attack his conviction through no fault of his own. See *id.* ¶¶ 27-28 (initial petition

dismissed as moot after the defendant's direct appeal was reinstated); *People v. Sawczenko*, 328

Ill. App. 3d 888, 897 (2002) (defense counsel withdrew the defendant's initial petition at the

second stage of postconviction proceedings without conferring with the defendant first); *People

v. Little*, 2012 IL App (5th) 100547, ¶ 19 (the defendant filed an initial postconviction petition,

seeking only to reinstate his right to a direct appeal that was lost due to his counsel's

ineffectiveness).

¶ 40        Whether a defendant's successive postconviction petition should be treated as an

initial petition is a question of law that we review *de novo*. *Taylor*, 2022 IL App (2d) 190951, ¶ 17.

¶ 41                                  2. *This Case*

¶ 42          Defendant argues his successive postconviction petition should be treated as an initial petition because the trial court summarily dismissed his initial petition, at least in part, on the basis that some of the issues he raised in his initial petition were being raised on direct appeal. According to defendant, because his brief in the direct appeal was filed four months after the court ruled on his initial petition, it was unknown what issues were actually raised on direct appeal when the court ruled, and, thus, the dismissal of some of his claims on that basis rendered the proceedings deficient. Defendant also suggests his successive petition must be treated as his initial petition because the court did not specify which claims it found frivolous or patently without merit. We disagree.

¶ 43          Putting aside the fact defendant wanted this court to remand his direct appeal for the trial court to consider new evidence that it found was not new in its order summarily dismissing the initial petition, nothing suggests that the *proceedings* on the initial petition were deficient. Specifically, nothing happened during the proceedings on defendant's initial petition that denied defendant his one complete opportunity to collaterally attack what transpired at trial. *Id.* ¶ 29. Indeed, the record establishes defendant filed, and the trial court ruled on the merits of, his initial petition.

¶ 44          Rather than a deficiency in the proceedings, defendant takes issue with the trial court's *findings* that some issues were frivolous or patently without merit and others were going to be raised on direct appeal. Alleged errors in the court's findings are not deficiencies in the proceedings. Accordingly, we will not treat defendant's successive petition as his initial petition.

¶ 45	B. Denial of the Motion for Leave To File a Successive Postconviction Petition

¶ 46	1. *The Law*

¶ 47	A defendant is generally limited to only one postconviction petition. *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 16. "Successive petitions are discouraged because the defendant has already had one complete opportunity to show a substantial denial of his constitutional rights." (Internal quotations marks omitted.) *Id.*

¶ 48	When a defendant seeks to file a successive petition, he must file a motion for leave to file a successive petition and satisfy an initial threshold. *People v. Edwards*, 2012 IL 111711, ¶ 24. Specifically, "the trial court must first determine whether the petition (1) states a colorable claim of actual innocence [citation] or (2) establishes cause and prejudice." *People v. Lee*, 2016 IL App (1st) 152425, ¶ 43. On appeal, defendant asserts only that he has established cause and prejudice.

¶ 49	Cause is defined as an "objective factor that impeded [the defendant's] ability to raise a specific claim during [the] initial post-conviction proceedings." 725 ILCS 5/122-1(f) (West 2022). "[A] showing that the factual or legal basis for a claim was not reasonably available *** will constitute cause." (Internal quotation marks omitted.) *People v. Blalock*, 2022 IL 126682, ¶ 39. Prejudice "occur[s] if the [defendant] w[as] denied consideration of an error that so infected the entire trial that the resulting conviction or sentence violates due process." *People v. Pitsonbarger*, 205 Ill. 2d 444, 464 (2002). Both "cause" and "prejudice" must be established for the defendant to prevail. *Id.* We review *de novo* the denial of a request for leave to file a successive postconviction petition. *People v. Moore*, 2023 IL 126461, ¶ 33.

¶ 50	2. *This Case*

¶ 51	Regarding cause, defendant asserts, "The resulting default of the issues he wished

to raise did not occur until after the opening brief in his direct appeal was filed, and after his initial postconviction petition had already been denied." Concerning prejudice, defendant states his "disagreement with decisions made by his appellate counsel and the ensuing denial of his request to proceed *pro se* on direct appeal \*\*\* forced [him] to forfeit claims he wanted raised on direct appeal." We conclude that defendant's arguments are unavailing.

¶ 52   First, as the trial court found, defendant has failed to satisfy the cause-and-prejudice test as to any identifiable claim. All the issues he raised in his successive petition were raised or could have been raised previously and did not so infect the proceedings that defendant was denied due process.

¶ 53   Second, this court granted defendant's request to proceed *pro se* on appeal from the summary dismissal of his initial postconviction petition. As part of that appeal, defendant could have taken issue with the trial court's finding that his initial petition should not have been summarily dismissed because it was not known at that time what issues appellate counsel was going to raise on direct appeal. Moreover, defendant could have raised in that appeal all the meritorious issues he claims he had. Instead, defendant chose not to pursue an appeal of the summary dismissal of his initial petition by not filing a brief. Defendant must live with the consequences of that decision and cannot raise now issues he should have raised then.

¶ 54   Third, we note the trial court's denial of defendant's motion for leave to file a successive petition was extensive and written after a thorough examination of defendant's multiple pleadings and the entire record. We are grateful for the attention the court gave this case that defendant has, simply put, mucked up. After our own review of the record, we wholeheartedly agree with the trial court and emphatically reject all the arguments defendant has raised in the trial court and in this court.

¶ 55        As a last matter, we caution defendant that if he were to file repetitive, duplicative, or groundless pleadings in this court, he would be subject to sanctions under Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994).

¶ 56                                III. CONCLUSION

¶ 57        For the reasons stated, we affirm the trial court's judgment.

¶ 58        Affirmed.