2024 IL App (1st) 230057-U

SECOND DIVISION
December 24, 2024

No. 1-23-0057

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 03330 |
| | ) | |
| BRANDON C. HARRIS, | ) | Honorable |
| | ) | Margaret M. Ogarek, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Rena Marie Van Tine and Justice Ellis concurred in the judgment.

ORDER

¶ 1    *Held*:   We reverse the judgment of the circuit court of Cook County granting the State's motion to dismiss defendant's petition for postconviction relief; the trial court erroneously treated the petition as a successive petition where an earlier petition was not dismissed as frivolous or patently without merit; the case is remanded for further second-stage proceedings.

¶ 2    On February 24, 2015, the State indicted defendant, Brandon C. Harris, on three counts of criminal sexual assault and two counts of aggravated sexual abuse. On February 23, 2016, defendant pleaded guilty to criminal sexual assault of a family member under 18 years of age in exchange for eight years' imprisonment. Defendant filed a motion to withdraw his guilty plea,

which was denied as untimely. Defendant filed a direct appeal of the judgment denying his motion to withdraw his guilty plea. While that appeal was pending, on June 26, 2017, defendant filed a *pro se* petition for postconviction relief. The trial court reasoned that because defendant had a pending direct appeal it did not have jurisdiction and dismissed defendant's *pro se* petition.

¶ 3　　On August 12, 2018, defendant filed a *pro se* petition for postconviction relief that is the subject of this appeal. On October 26, 2018, the trial court advanced defendant's *pro se* petition to the second stage of postconviction proceedings.

¶ 4　　On May 29, 2019, this court granted defendant's direct appeal counsel's motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967) (*Anders*) and defendant's conviction was affirmed.

¶ 5　　On February 2, 2021, the State filed a "Motion to Dismiss Petitioner's Successive Post Conviction Petition." On February 4, 2022, following a hearing, the trial court entered an order granting the State's motion to dismiss defendant's August 12, 2018 postconviction petition. For the following reasons, we reverse and remand the case for further second-stage postconviction proceedings on the August 2018 petition, with instructions.

¶ 6　　　　　　　　　　　　　　　BACKGROUND

¶ 7　　Defendant entered a fully negotiated guilty plea to criminal sexual assault of a victim under 18 years of age when the act was committed and with whom defendant resided in the household with for at least six months. Prior to the plea, defendant's trial attorney secured an order allowing a psychiatrist to have access to defendant. The State and defendant agreed to a sentence of eight years' imprisonment. The trial court asked, "Is there a form regarding the sex offenders [*sic*] registration?" The State responded there was not, because "when he gets released he will be filling out the form because it will say when exactly he needs to register." The trial

court explained defendant's jury waiver to defendant, then continued, in pertinent part, as follows:

> "THE COURT: The charges that you are pleading to is a Class 1 felony, with the possible range of imprisonment on this charge with the minimum of four years up to a maximum of fifteen years in the Illinois Department of Corrections.
>
> And upon your release from the Illinois Department of Corrections you are required to serve a period of time on a mandatory supervisory release, which is anywhere from three years to natural life. Do you understand that range of imprisonment on this charge?"

¶ 8 Defendant responded, "Yes, your Honor." The trial court then asked defendant, "Has anyone threatened or promised you anything to get you to plead guilty?" and defendant responded, "No, your Honor." The court asked defendant if he was pleading guilty of his own free will and defendant said that he was. The following exchange occurred:

> "THE COURT: If you are not a U.S. citizen there can be deportation, exclusion from the admission to the United States or denial of naturalization under the laws of the state. Do you understand that, sir?
>
> THE DEFENDANT: Yes, your Honor."

¶ 9 The State then provided a factual basis for the plea. Thereafter the trial court found that defendant "understands the possible penalties and his rights under the law." The court found that the plea was made freely and voluntarily and that there was a sufficient factual basis for the court to accept the plea. The court stated, "And upon your release from [IDOC,] you are required to serve a period of time on mandatory release which is three years to natural life and this will be served at 85 percent calculable rate." The trial court admonished defendant of his appeal rights,

3

including that,

> "If you choose to appeal you must do it within thirty days of today's date.
> Before you do so, you must ask the Court to allow you to withdraw your plea of
> guilty and to vacate the judgment being entered here today."

Other than asking the State whether there was a form, the trial court did not mention sex offender registration.

¶ 10     More than thirty days later, on April 7, 2017, defendant filed a *pro se* "Motion to Withdraw Guilty Plea and Vacate Sentence." Defendant's *pro se* motion acknowledged that the motion was late but claimed that the late filing was "not due to [defendant's] own culpable negligence." The motion alleged, in pertinent part, that defendant (1) was not mentally competent to enter a plea, (2) the plea was the result of coercion, and (3) defendant "had inadequate representation by counsel." On May 26, 2017, the trial court denied the motion as untimely.

¶ 11     On June 23, 2017, defendant filed a *pro se* notice of appeal from the denial of his motion to withdraw his guilty plea. The trial court appointed counsel to represent defendant on appeal (direct appeal counsel). Defendant's direct appeal counsel filed a motion to withdraw pursuant to *Anders*. On June 26, 2017, defendant filed a *pro se* petition for postconviction relief (before defendant's appeal of the judgment denying the motion to withdraw guilty plea was resolved) (hereinafter, "the 2017 petition"). On October 6, 2017, the postconviction court found (incorrectly) that it lacked jurisdiction due to the pending appeal and dismissed the petition. On October 12, 2018 (which was still before this court resolved defendant's appeal of the denial of the motion to withdraw) defendant filed "another" *pro se* petition for postconviction relief (hereinafter, "the 2018 petition"). The *pro se* 2018 petition is the subject of this appeal.

¶ 12    The 2018 petition argues that defendant's direct appeal was "no longer pending." Defendant asserted that, "My most important claim is that I'm actually innocent." Defendant claims there was "newly found exculpatory evidence to support [that] claim" and asked the court to see an attached affidavit for details. In an affidavit attached to the petition, defendant averred:

"The victim's mother *** posted on my Facebook wall that her daughter (the victim) was 9 years old when she was molested. I broke up with [the victim's mother] and moved away when her daughter was merely 8.5. I never once saw her daughter while she was nine. The post is currently 'archived' in my Facebook. I would need access to a computer with internet access to retrieve the post."

¶ 13    The 2018 petition also makes several claims of ineffective assistance of counsel during plea proceedings. First, the petition argues that defendant's trial attorney coerced defendant to plead by yelling and threatening defendant with natural life imprisonment if defendant did not accept the plea bargain. Next, defendant argues that defendant's trial counsel violated defendant's right to effective assistance of counsel when counsel "gave [defendant] wrong advice by telling me that I could ask for a reduction in sentence after I got to the prison." The petition also claims that trial counsel "failed to investigate [the] case even in the slightest."

¶ 14    Next, defendant argues that trial counsel provided ineffective assistance because counsel failed to file a motion to suppress two statements by defendant after defendant asked counsel to move for suppression. Defendant claims this failure contributed to defendant's feeling "condemned and helpless while [trial counsel] was coercing [defendant] to plea." The petition claims the two statements were involuntary and that defendant "would have never pled guilty had the [two] statements been suppressed as they should have been." The 2018 petition also argues that defendant "was not convicted of the charge I was indicted for," did not plead guilty to

5

criminal sexual assault specifically of a family member, and that defendant asked trial counsel to file a motion for a speedy trial but trial counsel refused. The petition also argues that defendant asked trial counsel "to seek a physical and a mental exam of the victim, but [counsel] refused to assist me with that" and "failed to consult with an expert on the topic of child sex abuse once again violating my right to effective assistance of counsel."

¶ 15    Defendant's petition also argues that defendant was not competent to plead because "at that time" he was taking the wrong medication to treat bipolar type schizoaffective disorder. The petition states that defendant was taking Haldol, which made defendant's judgment, concentration, and insight poor, as noted in medical records attached to the petition. The 2018 petition also claims that medical records attached to the petition prove defendant "was not stable and on the right medication until March 2017." The medical records attached to the petition are a mental health progress note; a general "Psychotropic Medication Information" sheet; psychiatric progress notes; mental health progress notes; and a "Mental Health Services Referral" and "Crisis Watch Record." The medical records reveal that on April 2, 2016, a DOC psychiatrist found that defendant's "concentration is poor. Judgment and insight are poor." The psychiatrist assessed defendant with "schizoaffective disorder, depressed-type" and ordered defendant to continue on Haldol.

¶ 16    On May 1, 2016, a staff psychiatrist for DOC found that defendant's "[c]oncentration, judgment, and insight are poor." On that date, after defendant "insisted on stopping Haldol and taken [*sic*] off of other medications," defendant and the psychiatrist "agreed on stopping Haldol." On March 13, 2017, defendant's psychiatrist in DOC ordered that defendant start Risperdal. On March 28, 2017, a Licensed Clinical Social Worker noted that defendant's "judgment and insight appears to be improving. [Defendant's] thoughts are more logical and linear." A February 13,

2018 psychiatric progress note states that defendant was then on Risperdal and at that time defendant's insight and judgment appeared good. The note also states that another doctor mentioned that defendant's insight and judgment were poor when taking Haldol, "as evidenced in a previous progress note." Progress notes prior to March 2017 indicate problems with defendant's concentration, judgment, and insight prior to March 13, 2017. Finally, the petition claims that defendant did not learn how to file a motion to withdraw guilty plea until April 2017. The petition says that defendant "did it wrong" by leaving out "important facts to explain why equitable tolling should be allowed." Those facts included "no access to commissary for stationary and no access to a law library in time to file on top of not being on the right medication, 'Risperdal,' until March 2017."

¶ 17    On October 26, 2018, the trial court found that defendant's 2018 petition stated the gist of a constitutional claim and docketed the petition for second stage postconviction proceedings. In December 2018 defendant filed two "affidavits." The first affidavit titled, "Affidavit in Form of Letter in Support Post-Conviction Pet.," is addressed to the trial court and states, in pertinent part, that defendant's trial attorney's "will was to put me in prison guilty or not." Defendant claimed to be "far better than I was pre-trial" on his new drug regimen. Defendant stated that before his interrogation by police he was intoxicated and in isolation, and he "gave in to the system and what I thought [the victim's] fantasy was." Defendant claimed his "will was overcome" and claimed to have "fabricated most of the story." Defendant also claims to have "simply agreed with the police or answered yes at time [*sic*] I shouldn't have." Defendant stated that, "Later on, between [trial counsel's] coercion and me being scared of my own potentially inculpatory statements that [trial counsel] refused to motion to suppress, my will was overcome again and I pled guilty."

¶ 18    Defendant also filed a "Supplemental Affidavit in Support of Post-Conviction Petition" in which defendant averred, in pertinent part, that when he was arrested for this offense he was on methamphetamine and mentally ill. When interrogated, defendant claims he was "out of it" and "just agreed to everything they asked." Defendant claims he "was high, mentally ill, and even hearing a voice in [his] head that day." Defendant states he told trial counsel defendant had a mental illness," trial counsel had defendant evaluated "to see if [defendant] was insane at the time of the crime and it was found that I wasn't." Defendant's affidavit states as follows:

> "On 2-23-16 my public defender came into the bullpen and said 'Brandon, I've got a sweet deal for you. The State came all the way down to 8 yrs @85%! You better take it because I fought hard to get it down to that because you were in the Army.' After a moment I told him 'I can't do it.' He immediately began yelling at me and got in my face, 'WHAT THE [EXPLETIVE]!? I HAD RESPECT FOR YOU BECAUSE YOU SERVED OUR COUNTRY! ARE YOU FREAKING STUPID? YOU BETTER TAKE THIS DEAL OR I'LL MARCH IN THERE AND SCHEDULE YOU FOR TRIAL AND YOU'LL GO TO PRISON FOR NATURAL LIFE!' Then he changed his tone back to a friendly tone and said 'look at it this way, you'll only have to do 68 months in prison which is much nicer than jail. Plus once you get to prison you can always ask for a sentence reduction. You know, what the right thing to do here is.' "

¶ 19    The affidavit claims this event "traumatized" defendant. Defendant claimed that his trial counsel "insisted that I plea." Defendant stated that "between [counsel's] yelling at me, the conditions in jail, desire for a law library, and being scared of what I couldn't remember I told the police, plus feeling guilty for for [*sic*] stupid reasons, I pleaded guilty." Defendant claims that

when the trial court asked if he pleaded guilty of his own free will, defendant "thought I was, but I wasn't." Defendant claims it was his attorney's will and the State's will that defendant "gave in to." Defendant also talks about his allegedly incorrect medication for his mental illness and its negative impact on his judgment, concentration, and insight. Defendant states that his mental illness has caused a "history of delusions, hallucinations, and psychosis." Defendant concluded:

"When I really needed a lawyer the most, I was denied one... My own uninvestigated statements helped scare me into a plea and I was also without the help of a lawyer for the 13 months suffering in cook county jail. I knew that pleading was the wrong thing to do, but because he yelled at me and I felt condemned and helpless, I instantly had the desire to go to prison, use their law library, and prevail."

¶ 20    On January 11, 2019, defendant's appointed postconviction counsel appeared in court on behalf of defendant. Appointed postconviction counsel informed the trial court there had been "some communications from [defendant.]" On February 25, 2019, defendant, acting *pro se*, filed a document titled "Supplemental Claims to Post-Conviction Petition." The "supplemental petition" purported to add six claims (which defendant numbered 16 through 21). The pertinent claims in the "supplemental petition" are:

1. Defendant was denied access to the courts "during the critical time to withdraw a plea" (and defendant's attorney never checked with defendant to ask if defendant wanted to withdraw the plea),

2. Defendant "was never warned by anyone that I would have to register as a sex offender for the rest of my life prior to pleading, rendering my plea unknowing," and

3. Defendant had been prescribed Invega for bipolar schizoaffective disorder before his arrest but the jail would not provide it for him, therefore defendant should have had a fitness hearing;

defendant pleaded guilty "[b]ecause of delusions present on the day of the plea;" defendant's trial attorney failed to adequately consult with defendant and treated defendant as guilty despite defendant telling trial counsel that defendant was not guilty; and defendant "pled while delusional and in desperation for information about the case."

¶ 21    On May 29, 2019, this court granted defendant's direct appeal counsel's motion to withdraw. Defendant responded by asserting that the "record 'clearly reflects a bona fide doubt as to my fitness for proceedings.' " Defendant claimed trial counsel failed to follow through on a request for a psychiatric evaluation and no results were ever given. Defendant claimed to suffer from episodic bipolar-type schizoaffective disorder, that the jail was experimenting with medications, and that during the time he was required to move to withdraw his guilty plea, defendant was taking Haldol which allegedly caused defendant to have poor judgment, concentration, and insight. We found that the record showed that defendant's trial attorney informed the trial court that despite the request for a psychiatric evaluation counsel was " 'no longer pursuing that avenue.' " We found that "[n]othing in the record or in the documents attached to defendant's response reflects defendant's mental health status on the date he pled guilty, February 23, 2016, or during the 30 days following his plea." We found that because the trial court substantially complied with Rule 605(c) by admonishing defendant of the requirements that he had to appeal within 30 days but first had to ask the court to allow defendant to withdraw the plea of guilty and vacate the judgment, defendant's failure to file a post-plea motion within 30 days was not excused. We found that since "defendant did not file a post-plea motion *** within 30 days" we did "not have authority to consider the merits of defendant's appeal." This court granted direct appeal counsel's motion to withdraw and dismissed the appeal.

¶ 22    On January 8, 2021, defendant's private postconviction counsel appeared in court with defendant present. The trial court asked private counsel whether counsel was reviewing the file. Counsel responded, "Yeah. And, Judge, at this point I'm certainly going to adopt the sum and substance of what [defendant] has filed on his own. And I think just to keep the case moving along I would ask your Honor to direct [the State] to *** file a response in this case." The court informed private counsel, "you have to file what you have. You have to tell me what exactly you're proceeding on." The State said that "means the 651(c)." Private counsel responded, "I'll file the 651(c); but it's certainly going to be on the allegations that [defendant] has raised on his own." The court continued the matter "for status on the 651(c) and amended petition" and added, "And then I would like you to let me know of what [defendant] has filed before the Court because there seems to be multiple filings in the court file." The court clarified, "The date of the ones that you are adopting if you're not going to be filing a separate amended petition, I'd like to know which ones you are proceeding on." Private counsel stated that would be done when counsel did the 651(c).

¶ 23    On January 12, 2021, defendant's private counsel filed a "Attorney Certification Pursuant to Illinois Supreme Court Rule 651(c)" that read, in total, as follows:

> "The undersigned, on oath, as the attorney in this matter and pursuant to Illinois Supreme Court Rule 651(c) has consulted with petitioner by phone, mail, electronic means or in person to ascertain his contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial and sentencing and reviewed the original court file. Counsel has conducted a diligent investigation into this matter and he verily believes the facts and circumstances support the filing of this Petition and the statements in said Petition are true in

substance and in fact."

¶ 24    On February 2, 2021, the State filed a "Motion to Dismiss Petitioner's Successive Post Conviction Petition." The State's motion argued defendant failed to satisfy the cause-and-prejudice test, *res judicata* applied to several of defendant's claims, defendant failed to meet both requirements of the *Strickland* test, and that defendant failed to demonstrate actual innocence. On November 19, 2021, the trial court held a hearing on the State's motion to dismiss. The court stated that it "did see the supplemental postconviction petition paragraphs, and I've added that to my materials for purposes of my review." The court stated the "matter is set for second stage hearings." At the beginning of its argument, the State stated that they were "here on the State's motion to dismiss second stage proceedings" but later stated that "it should be noted that this is a successive petition." The State argued that the prior trial judge "granted leave to file the successive petition" but the State was not present and could not make any legal arguments. The State explained, "So in the motion to dismiss, there is a paragraph stating that the Petitioner has not met the cause and prejudice analysis. The reasons why that's in there is obviously this is the first time that the State can make that argument."

¶ 25    Defendant's private counsel began by stating "I'm going to rest on the extensive filings in this matter." On the issue of the petition being a successive postconviction petition, defendant's counsel argued that the prior trial judge advanced the petition to the second stage, "[s]o to whatever extent the State may have been able to argue at the outset that this was successive and that [defendant] needed to get permission to file it and we needed to allege new issues that were not or could not have been made initially, again I think that ship has sailed." Counsel argued the matter "has already been essentially *de facto* ruled on" and that it was "a moot point."

¶ 26    On February 4, 2022, the trial court entered a written order granting the State's motion to

dismiss. The trial court's order noted that defendant's attorney "did not later amend either the Post-conviction petition nor the Supplemental Claims." The court found that defendant's claim of actual innocence is not legally sufficient "and also fails the cause and prejudice test;" in 2017 defendant advanced the claim addressing the denial of his late-filed motion to withdraw his guilty plea and his current claim is subject to *res judicata*; defendant's claims of ineffective assistance of counsel fail the cause-and-prejudice test; defendant's claims of ineffective assistance are directly contradicted by the record, are fanciful, or are legally unsupported; the ineffectiveness, perjury, and admonishment claims "failed to demonstrate [*Strickland*] prejudice" and "do not rise to the level of a meritorious claim;" defendant advanced the same claims of ineffective assistance in his 2017 *pro se* postconviction petition and the instant claims are subject to *res judicata*; defendant offered no basis to find defendant is not culpable for the delay in presenting the ineffectiveness issues and as such they are forfeited; and defendant's fitness claim is refuted by the record *and* subject to *res judicata* and forfeiture. The trial court's order concluded as follows:

> "Based upon the foregoing discussion, this court finds that *** the allegations put forth in Petitioner's post-conviction petition and supplemental claim are barred by *res judicata*, have failed to meet the cause and prejudice test, and further failed to make a substantial showing of Constitutional violation. Accordingly the Motion to Dismiss the Petition for Post-Conviction relief is hereby GRANTED."

¶ 27   On February 8, 2022, defendant's private counsel filed a "Motion to Reconsider Dismissal of Post-Conviction Petition." Counsel argued the trial court erred "in treating the instant petition as a successive petition and thus erred in treating the issues as *res judicata*." On

April 13, 2022, defendant's private counsel filed a motion to withdraw as defendant's attorney. On May 11, 2022, defendant, acting *pro se*, filed a document titled "Direct Attack on Void Judgment." Defendant's *pro se* post-ruling motion also argued that the trial court erred in ruling on the 2018 petition as a successive postconviction petition and argued the State "defrauded the court" by mischaracterizing the petition. On November 17, 2022, defendant's private counsel filed a "Renewed Motion to Withdraw" in which counsel informed the trial court that defendant had been arrested in Missouri, at the time defendant was on parole in Illinois, whatever the disposition of the case in Missouri is, at that time defendant will be returned to DOC "in response to a parole violation filed by the State of Illinois," and, therefore, "it seems reasonable to conclude *** [defendant] will not be able to appear in-person *** any time in the near future."

¶ 28    On December 16, 2022, in a hearing on the pending post-ruling motions the trial court stated that it had reviewed the motions and that they were denied, consequently the motion to withdraw was moot. Defendant's private counsel agreed. On January 4, 2023, defendant, acting *pro se*, filed a notice of appeal.

¶ 29    This appeal followed.

¶ 30                                 ANALYSIS

¶ 31    This is an appeal from an order granting the State's motion to dismiss a postconviction petition. "We review a judgment granting a motion to dismiss a petition for postconviction relief at the second stage of postconviction proceedings *de novo*." *People v. Lopez*, 2015 IL App (1st) 142260, ¶ 18. The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2022)) "provides a remedy for incarcerated defendants who have suffered a substantial violation of their constitutional rights." *People v. Johnson*, 2018 IL 122227, ¶ 14. The Act provides a familiar three-stage process to address incarcerated defendants' constitutional claims. At the first stage

the trial court determines whether the defendant's claims are " 'frivolous or *** patently without merit,' " based solely on the pleadings *Johnson*, 2018 IL 122227, ¶ 14. At the second stage the court must determine whether the petition makes a substantial showing of a constitutional violation. *Id.* ¶ 15. At the second stage, the State is permitted to file a responsive pleading including a motion to dismiss the petition. *Id.*, *People v. Thompson*, 2016 IL App (3d) 140586, ¶ 20. If the petition survives a motion to dismiss and/or the court determines the petition sets forth a substantial showing of a constitutional violation, the petition is advanced to the third stage, where the court conducts an evidentiary hearing. *Johnson*, 2018 IL 122227, ¶ 15, *People v. Gallano*, 2019 IL App (1st) 160570, ¶ 23.

¶ 32    The Act contemplates the filing of only one petition. *People v. Peacock*, 2022 IL App (1st) 170308-B, ¶ 4. A defendant may not file a successive petition without leave of court. *Id.* Leave will only be granted if "(1) a defendant can establish 'cause and prejudice' for the failure to raise the claim earlier or (2) [a defendant] can show actual innocence under the 'fundamental miscarriage of justice' exception." *Id.* "Claims that were decided *** in an earlier postconviction proceeding are generally barred by the doctrine of *res judicata*, and claims that could have been, but were not, raised in an earlier proceeding are forfeited." *People v. Daniels*, 2020 IL App (1st) 171738, ¶ 21. The decision to grant or deny leave to file a successive postconviction petition is reviewed *de novo*. *People v. Griffin*, 2024 IL 128587, ¶ 33 (*de novo* review under the "actual innocence" standard), *People v. Montanez*, 2023 IL 128740, ¶ 80 (*de novo* review under the "cause and prejudice" standard).

¶ 33    Initially, the parties dispute whether the dismissal in this case was a dismissal of an initial postconviction petition or a successive postconviction petition. "Because this issue raises a pure question of law, our review is *de novo*." *People v. Taylor*, 2022 IL App (2d) 190951, ¶ 17.

Defendant argues the trial court erred in characterizing the 2018 petition as a successive petition. Defendant argues this court should treat the petition "as an initial petition that was dismissed at the second stage," first because the dismissal of defendant's 2017 petition "was not based on a finding that the petition was frivolous or patently without merit," and second because defendant did not have a complete opportunity to collaterally attack his conviction in proceedings on the 2017 petition. Defendant relies on this court's decisions in *Taylor*, 2022 IL App (2d) 190951, and *People v. Little*, 2012 IL App (5th) 100547. The State responds the trial court properly characterized the 2018 petition as a successive petition because a finding that the trial court lacks jurisdiction over a petition is a finding that the petition is frivolous or patently without merit. The State argues that our supreme court has found that where a petition fails to satisfy "substantive legal criteria," such as standing, *res judicata* and forfeiture, the petition is necessarily frivolous and patently without merit, and jurisdiction is "an issue of law, not merely a procedural formality" that is analogous to standing, *res judicata* and forfeiture. The State also argues that defendant could have appealed the trial court's erroneous finding that it lacked jurisdiction and, therefore, defendant was afforded a complete opportunity to collaterally attack his conviction.

¶ 34    In *Taylor*, the defendant filed a postconviction petition alleging ineffective assistance of counsel based on the failure to timely file an appearance and causing the dismissal of the appeal. *Taylor*, 2022 IL App (2d) 190951, ¶ 5. While the postconviction petition was pending, the court reinstated the appeal and subsequently the trial court *sua sponte* dismissed the petition as "moot." *Id.* ¶¶ 6-7. Less than two months later, defendant filed another postconviction petition. *Id.* ¶ 9. The pertinent issue on appeal was whether the second petition was a "successive" petition under the Act. *Id.* ¶ 13. The *Taylor* court held that it was not, "because [the first petition] was not a true collateral attack on [the] conviction and sentence." *Id.* ¶ 31. The *Taylor* court reasoned that

the trial court could treat the second petition as a "successive" petition only if it treated the earlier petition as an "initial" petition. *Id.* ¶ 18. Whether the trial court treated the earlier petition as an "initial" petition depended upon "how the trial court disposed of it." *Id.* In *Taylor*, the trial court did not dismiss the earlier petition as frivolous or patently without merit; the trial court dismissed the petition as moot. *Id.* ¶ 19. The *Taylor* court held that "mootness does not mean being frivolous or patently without merit." *Id.* ¶ 24. The *Taylor* court rejected the argument that mootness is akin to other non-substantive bases for dismissing a petition as frivolous or patently without merit—specifically *res judicata* and forfeiture. *Id.* ¶¶ 21-24.

¶ 35    The *Taylor* court alternatively found that it would not treat the earlier petition as an "initial" petition, and therefore would not find that the second petition was a "successive" petition, because (1) the defendant did not have an opportunity to withdraw the petition before the trial court dismissed it, (2) defendant nor counsel had any input into the decision to dismiss the petition, and (3) defendant had no opportunity to show that the defendant's constitutional rights were violated. *Taylor*, 2022 IL App (1st) 190051, ¶ 28. The court relied on an earlier decision in which it found that "a 'trial court may allow the filing of successive petitions [without applying the cause-and-prejudice test[1]] when proceedings on a [prior] petition were deficient in some fundamental way.' [Citation.]" *Id.* ¶ 27 (quoting *People v. Sawczenko*, 328 Ill. App. 3d 888, 897 (2002)). The *Taylor* court also found that "section 122-1(f)'s reference to one petition *** without leave of the court ([citation]) indicates one complete opportunity to

---

[1]    The trial court dismissed a second postconviction petition as frivolous and patently without merit. *People v. Sawczenko*, 328 Ill. App. 3d 888, 892 (2002).On appeal, the *Sawczenko* court had to determine whether to affirm the summary dismissal of the petition as "an improper successive petition." *Id.* at 897. The court did not discuss the cause-and-prejudice test but did find that the defendant's second petition, which the court considered on its merits, was "not an improper successive petition." *Sawczenko*, 328 Ill. App. 3d at 897.

collaterally attack the proceedings which resulted in his or her conviction ([citation]). Thus, where *** a defendant has been denied that opportunity, [they] should be restored to the procedural posture [they otherwise] would have enjoyed ***." (Internal quotation marks omitted.) *Taylor*, 2022 IL App (2d) 190951, ¶ 29 (quoting *Little*, 2012 IL App (5th) 100547, ¶ 17).

¶ 36    At the outset, the State notes that this court, in a non-precedential order, has found that "when a court finds it lacks jurisdiction over a postconviction petition, it is finding that petition has no basis in law and is frivolous." *People v. Scates*, 2012 IL App (4th) 100292-U, ¶ 22. The State does not rely on this order. The State argues that *Taylor* and *Little* are inapposite because in this case defendant did not file the first petition to "secure his constitutional right to a direct appeal that was impeded due to his attorney's ineffectiveness." We reject the State's attempt to distinguish *Taylor* and *Little*. Based on the thorough analysis in *Taylor*, we also reject the State's argument that jurisdiction is akin to standing, *res judicata*, and forfeiture in that a finding of a lack of jurisdiction is a finding that a petition is frivolous or patently without merit.

¶ 37    The parties agree that "not every petition numerically identified as a second petition is 'second or successive' under the Act." *Taylor*, 2022 IL App (2d) 190951, ¶ 29. First, we find that defendant was denied the opportunity to collaterally attack his conviction in proceedings on the 2017 petition. In this case, just as in *Taylor*, defendant did not have an opportunity to withdraw the petition before the trial court erroneously dismissed it for lack of jurisdiction, (2) defendant nor counsel had any input into the decision to dismiss the petition, and as a result of the trial court's erroneous ruling, (3) defendant had no opportunity to show that defendant's constitutional rights were violated. See *Taylor*, 2022 IL App (2d) 190951, ¶ 28. Second, we find that when the trial court in this case dismissed the 2017 petition for lack of jurisdiction, the court

18

did not dismiss defendant's first petition as frivolous or patently without merit. Therefore, the court did not dismiss the 2017 petition as an initial postconviction petition and, consequently, the court erroneously treated the 2018 petition as a successive petition.

¶ 38    The *Taylor* court observed that our supreme court found that a lack of standing may be a basis to find that a petition is frivolous or patently without merit. *Id.* ¶ 23 (citing *People v. Johnson*, 2021 IL 125738).[2] In *Johnson*, the court distinguished standing from the timeliness of the petition or the requirement that it be verified by affidavit (which are *not* bases to dismiss a petition as "frivolous" or "patently without merit" (*Johnson*, 2021 IL 125738, ¶¶ 40, 41)) because (1) neither timeliness or the verification requirement is mentioned in the summary dismissal provision of the Act (*Johnson*, 2021 IL 125738, ¶ 44), (2) neither is "inherently an element of the right to file a petition" (*Johnson*, 2021 IL 125738, ¶ 45), and (3) the Act contains an exception for untimely petitions (*Johnson*, 2021 IL 125738, ¶ 46). On the contrary, "a lack of standing *is* more like *res judicata* and forfeiture, which *are* appropriate bases for first-stage dismissal" ((Emphases added.) *Johnson*, 2021 IL 125738, ¶ 48) because all three are "legal determinations that may bar relief under the Act." *Johnson*, 2021 IL 125738, ¶¶ 48-49. Like *res judicata* and forfeiture, "[s]tanding under the Act also involves a conclusion of law [that may bar relief] in that the legislature has identified who may institute proceedings and the conditions

_____

[2] The *Johnson* court found that,
> "The standing issue may be nuanced enough in some instances that the petition states the gist of a meritorious claim, making it inappropriate to dismiss the petition at the first stage. However, the plain and ordinary meaning of section 122-2.1(a)(2) authorizes first-stage dismissal of a postconviction petition when the petition is clearly, obviously, and plainly without merit. *** Summary dismissal is proper where there is no arguable basis in fact or in law that would give the petitioner standing to challenge his conviction." *People v. Johnson*, 2021 IL 125738, ¶ 59.

under which the proceedings may be brought." *Johnson*, 2021 IL 125738, ¶ 49. Thus, "where a defendant lacks standing under the Act because he is not 'imprisoned in the penitentiary' ([citation]), a claim brought under the Act is necessarily 'frivolous' or 'patently without merit' ([citation])." *Johnson*, 2021 IL 125738, ¶ 50. The *Taylor* court found that mootness is *not* like standing because, "unlike standing, mootness is not an inherent element that needs to be satisfied in *bringing* a petition." (Emphasis in original) *Taylor*, 2022 IL App (2d) 190951, ¶¶ 22-24 (citing *People v. Boclair*, 202 Ill. 2d 89, 101 (2002)). *Taylor* found that mootness is like timeliness, and thus not a basis for finding a petition frivolous or patently without merit, because, "like timeliness, a finding that a petition is moot does not concern evaluating whether a petition raises any claim of constitutional deprivation" under the Act. *Taylor*, 2022 IL App (2d) 190951, ¶ 24. The State cites *In re Crecos*, 2021 IL 126192, ¶ 11, for the proposition that jurisdiction "presents an issue of law" and therefore is similar to standing, *res judicata*, and forfeiture. We find *Crecos* inapposite. The question is not simply whether the grounds for dismissal presents a question of law but whether the grounds for dismissal is "an inherent element of the right created" under the Act. *Boclair*, 202 Ill. 2d at 98.

¶ 39     The right created under the Act only exists if the defendant is imprisoned (standing), the claim has not been decided (*res judicata*), or the claim could not have been decided earlier (forfeiture). Jurisdiction is the power of the court to determine a particular controversy that must exist in all proceedings before a court. The legislature did not choose to make jurisdiction an inherent part of the right conferred by the Act, although it could have. See *Boclair*, 202 Ill. 2d 89, 100–01 ("If the legislature intended for a trial judge to *sua sponte* dismiss a petition as being untimely, it would have so provided in section 122–2.1(a)(2) of the Act."), *Johnson*, 2021 IL 125738, ¶¶ 44-45. Additionally, the "jurisdictional" requirement of the Act is in the same section

of the Act that requires a petition to be "verified by affidavit" (725 ILCS 5/122-1(b) (West 2020)), not section 122-2.1(a)(2). Our supreme court has recognized that where the Act addresses issues in different sections of the Act the legislature indicated an intent to treat those issues differently. *Johnson*, 2021 IL 125738, ¶ 40. Obversely, by addressing issues in the same section of the Act, we may infer an intent to treat those issues similarly. A petition may not be dismissed as frivolous or patently without merit because it is not verified by affidavit. *People v. Hommerson*, 2014 IL 115638, ¶ 11. Therefore, we do not find that a petition that is dismissed for lack of jurisdiction is frivolous or patently without merit.

¶ 40    The State cites *People v. Love*, 2013 IL App (2d) 120600, in support of its argument the 2017 petition must be construed as an "initial" petition under the Act simply because defendant "did not file his initial petition to rescue his constitutional right to a direct appeal that was impeded due to his attorney's ineffectiveness." We are not persuaded. The issue in *Love* was not whether an earlier petition should be classified as an initial postconviction petition but whether an earlier "postconviction petition" should be classified as a petition pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)). *Love*, 2013 IL App (2d) 120600, ¶ 28. We reject the argument that only when a petition is filed to rescue a right to direct appeal will it not be characterized as an initial postconviction petition. The issue is not the reason for the filing of the first petition but how the petition is disposed of, and more specifically was it disposed of as frivolous or patently without merit because of a defect in an inherent element of the right created by the Act.

¶ 41    The State also cites *People v. Castleberry*, 2015 IL 116916, ¶ 15, for the proposition that jurisdiction is necessary for a final judgment. However, the State fails to cite authority for the proposition that jurisdiction is a legal criteria that is "an inherent element of the right to *bring* a

post[ ]conviction petition." (Emphasis in original.) *Taylor*, 2022 IL App (2d) 190951, ¶ 22 (quoting *Boclair*, 202 Ill. 2d at 98). Furthermore, the State has not explained how an invalid ruling on a postconviction petition (because the court lacked jurisdiction) makes the petition itself frivolous or patently without merit.

¶ 42     We also note the possibility that jurisdiction may be cured if, for example, a defendant files a petition in the wrong court. See 725 ILCS 5/122-1(b) (West 2020) ("The proceeding shall be commenced by filing with the clerk of the court in which the conviction took place."). In that way, jurisdiction is more like timeliness than standing, *res judicata*, or forfeiture. See *Boclair*, 202 Ill. 2d at 98 ("if a petitioner can demonstrate that the late filing was not due to his culpable negligence, there is no time limit within which a petitioner must file his post-conviction petition"). Nor do we find the fact defendant could have appealed the erroneous dismissal of his first petition to be consequential. Had defendant appealed the dismissal, he would have been successful and proceedings on his first petition would have proceeded, thereby giving defendant an opportunity to collaterally attack the judgment against him. Nonetheless, the State cites no authority holding that defendant's failure to do so results in forfeiture of defendant's statutory rights under the Act. Under these circumstances a finding that defendant forfeit his rights to collaterally attack his conviction would be "at odds with the Act." See *Hommerson*, 2014 IL 115638, ¶ 11 ("the circuit court may not dismiss a petition at the first stage of proceedings solely on the basis that it lacked a verification affidavit. Allowing a trial judge to *sua sponte* dismiss a petition on that ground conflicts with our prior holdings that, at the first stage of proceedings, the court considers the petition's substantive virtue rather than its procedural compliance.").

¶ 43     Finally, even were we to consider *Scates*, we do not find that it leads to a different result. The court concluded that "when a court finds it lacks jurisdiction over a postconviction petition,

it is finding that petition has no basis in law and is frivolous" without analyzing what "types" of "legal claims" render a petition frivolous or patently without merit. *Id.* ¶ 21. Not all "legal claims" affecting postconviction proceedings have that effect. See *Taylor*, 2022 IL App (2d) 190951, ¶¶ 21-23 (citing *Boclair*, 202 Ill. 2d 89, *Johnson*, 2021 IL 125738). *Scates* did not discuss *Boclair*, and predates *Johnson* and *Taylor*. We find its generic holding unpersuasive.

¶ 44      In this case the trial court did not dispose of defendant's earlier petition as an "initial" postconviction petition where the court did not summarily dismiss the petition as frivolous or patently without merit. A lack of jurisdiction does not render a petition frivolous or patently without merit. Therefore, the 2018 petition was not a "successive" petition under the Act. *Taylor*, 2022 IL App (2d) 190951, ¶ 24 ("Because of the improper treatment of the [earlier] petition under the Act, the trial court incorrectly treated [the] defendant's [latter] petition as a successive petition under the Act."). The petition must be construed as an "initial" petition. The trial court erred in treating the 2018 petition as a successive petition and applied the wrong standard by relying on a failure to satisfy the cause-and-prejudice or forfeiture based on the 2017 petition to dismiss the 2018 petition. The State's motion to dismiss also argued the merits of defendant's petition, and the trial court made rulings on the merits of defendant's claims. It is impossible to tell from the trial court's order the degree to which the trial court relied on a failure to satisfy the filing requirements for a successive petition or the alleged failure of the petition to make a substantial showing of a constitutional violation when it dismissed the petition. The trial court previously advanced the 2018 petition to the second stage of postconviction proceedings; therefore, the trial court's order is reversed, and the cause remanded for further second-stage proceedings on an initial postconviction petition. See *Little*, 2012 IL App (5th) 100547, ¶ 24 (where trial court failed to determine whether petition was frivolous or patently without merit

within 90 days, reversing for second stage proceedings and declining to " 'examine the record ourselves to determine whether [the] defendant's postconviction petition was frivolous or patently without merit.' "). Although we have no need to address defendant's claim of unreasonable assistance of counsel, on remand, we order the trial court to allow defendant to amend the petition. Should defendant again require appointed counsel, the trial court should appoint different counsel than previously appointed. See *People v. Kelly*, 2012 IL App (1st) 101521, ¶ 41 (remanding for further second-stage proceedings with the appointment of new counsel).

¶ 45                                    CONCLUSION

¶ 46    For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause remanded for further proceedings, with instructions.

¶ 47    Reversed and remanded with instructions.